[No. D017779. Fourth Dist., Div. One. Nov. 16, 1995.]

ANN DALRYMPLE, Plaintiff and Respondent, v.
UNITED SERVICES AUTOMOBILE ASSOCIATION, Defendant and
Appellant.

**COUNSEL**

Daniels, Baratta & Fine, Paul R. Fine and Lance Orloff for Defendant and Appellant.

Robert G. Dyer for Plaintiff and Respondent.

**OPINION**

**HALLER, J.**—In this appeal, we are required to determine if the trial court or the jury should decide the issue of whether an insurer had "proper cause" to pursue a declaratory relief action in which it disputed insurance coverage. (*Love* v. *Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151-1152 [271 Cal.Rptr. 246].) This question arises in the context of an insured's cross-action for damages for breach of the implied covenant of good faith and fair dealing, filed in response to the insurer's declaratory relief complaint seeking a determination that no coverage existed. The trial court severed for trial the declaratory relief action from the "bad faith" cross-action, tried the declaratory relief action first, and entered judgment that coverage existed. The subsequent trial on the cross-complaint resulted in a jury verdict for the insured.

United Services Automobile Association (USAA) appeals the judgment entered on this jury verdict awarding its insured, cross-complainant Ann Dalrymple, $44,164.50 as bad faith damages, representing the full amount of attorney fees incurred by Dalrymple's counsel in defense of the declaratory relief complaint brought by USAA to determine its rights and duties under a renter's protection policy providing personal liability coverage. USAA argues it was error for the trial court to deny its successive motions for judgment on the pleadings, nonsuit, and a directed verdict on Dalrymple's cross-complaint, all brought on the theory that it had not breached its insurance contract and accordingly could not have breached that contract's implied covenant of good faith and fair dealing. Dalrymple has cross-appealed to seek additional prejudgment interest and additional compensatory and punitive damages on her cross-complaint.

By analogy to the law of malicious prosecution, we shall explain that the proper cause determination is one for the trial court if the material facts are undisputed. We further determine that the question of an insurer's bad faith liability may be decided as a matter of law where the material facts are undisputed. Because we conclude that on this record the trial court should have granted the requested nonsuit or directed verdict as to the implied covenant cause of action, we reverse the judgment with directions to enter a different judgment in favor of USAA. Dalrymple's cross-appeal has become moot.

## Factual and Procedural Background

Dalrymple's cross-complaint on bad faith insurance theories and USAA's declaratory relief complaint both arose out of an incident in which Dalrymple, USAA's insured under a renter's protection policy, shot a "SWAT" team officer when he entered her quarters at the San Diego Naval Station, where she had barricaded herself. Dalrymple, a Navy neurosurgeon, had been experiencing mental problems for some time and the Navy was attempting to hospitalize her for psychiatric treatment. On September 24, 1987, Navy psychiatrist Captain James Fowler went to her room to escort her to the hospital. As he attempted to open her door, she shot him in the finger with a handgun. Security was alerted and her room secured; negotiators attempted for several hours to obtain her surrender. The San Diego Police Department SWAT Team was called in for assistance. Ultimately, it fired tear gas into her quarters, deployed a flash-bang grenade and sent in a team dog. Dalrymple fired shots at the dog. Thereafter, an entry team which included Officer Edward Verduzco entered her quarters; Dalrymple shot Verduzco once in his left leg. His team member fired his shotgun and

Dalrymple returned fire until she ran out of ammunition. She then surrendered approximately 15 minutes after the tear gas operation began.

The USAA renter's protection policy provided to the insured personal liability coverage with a limit of $100,000, "for damages because of bodily injury . . . caused by an occurrence . . . . [¶] . . . [¶] 'Occurrence' means an accident . . . which results, during the policy period, in: bodily injury . . . ." The policy excludes liability for bodily injury or property damage "which is expected or intended by the insured." Approximately one month after the SWAT team incident, an attorney representing Officer Verduzco called USAA to inquire about Dalrymple's insurance coverage. Verduzco had not yet filed an action for damages, and would not do so until September 1988, approximately one year after the shooting. However, three months after the shooting, USAA retained an adjustment company to investigate Verduzco's claim under a reservation of rights. Dalrymple refused to cooperate with the adjuster, advising USAA that it was not authorized to investigate the matter or release a copy of the policy, and she did not intend to make any payments to Verduzco or his attorney. Nevertheless, on December 30, 1987, USAA retained insurance defense counsel, John Wingert, to represent her interests. Dalrymple then retained *Cumis* counsel. (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913] (*Cumis*).)

In the course of dealing with Verduzco's claim against the policy and potential litigation, insurance defense counsel Wingert raised the possibility with USAA that the firefighter's rule might apply,[1] thus giving Dalrymple a potential defense against an action by Verduzco. Wingert was familiar with Navy psychiatric testimony obtained at court-martial proceedings for Dalrymple, showing there were questions as to her state of mind at the time of the incident and whether she was then mentally capable of an intentional act to inflict injuries. Ultimately, the Navy concluded that at the time of the shooting incident Dalrymple suffered from a severe mental disease and that,

---

[1]In general, the firefighter's rule, also applicable to police officers, provides that negligence in causing a fire (or a dangerous situation) furnishes no basis for liability to a professional firefighter (or police officer) injured fighting the fire (or dealing with the dangerous situation). (*Walters* v. *Sloan* (1977) 20 Cal.3d 199, 202 [142 Cal.Rptr. 152, 571 P.2d 609], disapproved in part in *Neighbarger* v. *Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 538 [34 Cal.Rptr.2d 630, 882 P.2d 347].) The basic principle is that a member of the public whose conduct precipitates the officer's intervention owes no duty of care to the officer respecting the original negligence causing the intervention. (*Ibid.*) There are statutory and case law exceptions to the rule: e.g., for willful or negligent acts causing injury under certain conditions involving the actor's knowledge of the officer's presence, intent to injure, etc. (See Civ. Code, § 1714.9; 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 746, pp. 80-82.) Such exceptions factored into the coverage dispute here, as will be discussed.

as a result, she was unable to appreciate the nature and quality or wrongfulness of her conduct.

In May 1988, USAA obtained a coverage analysis from Attorney Kenneth Goates, who opined that the shooting was not accidental, and that "[t]he definition of 'accidental' does not require a determination of the insured's state of mind or mental competency at the time of the act as does the intentional acts exclusion." (Ins. Code, § 533.) Goates noted that it was then unknown if Dalyrymple intended to shoot the two persons, and it was unclear if she would be raising the issue of her mental competence at the time of the incident, due to potential damage to her medical career. This coverage opinion focused on the question of whether there was coverage for an "occurrence," based on analysis of existing case law, and concluded the lack of an "accident" precluded the potential of coverage. However, Goates recommended that USAA continue to defend Dalrymple while pursuing a resolution of the coverage issue through a declaratory relief action.

In August 1988, Dalrymple advised USAA she wanted a new insurance defense attorney and she had fired her *Cumis* counsel. During Wingert's eight months' representation of Dalrymple, Verduzco was demanding a policy limits settlement of the claim, even though he had not yet filed suit. Wingert believed this demand was excessive and that the case would have a damages value of $50,000.

On September 23, 1988, Verduzco filed his complaint for damages against Dalrymple, alleging both intentional tort and negligence theories. (Verduzco v. Dalrymple (Super. Ct. San Diego County, 1988, No. 604075).) In October 1988, USAA retained Attorney Debra Hurst as Dalrymple's new insurance defense counsel. By December 1988, Dalrymple had hired Robert G. Dyer as her new *Cumis* counsel. On October 25, 1988, USAA filed the declaratory relief action regarding its rights and duties under the renter's protection policy. (Code Civ. Proc., § 1060.) Thereafter, Dalrymple filed her cross-complaint on bad faith theories; trial on the cross-complaint was deferred until after the declaratory relief action was resolved.

In August 1989, almost a year before the declaratory relief judgment, Judge Gamer held a settlement conference in the Verduzco matter, which both the Verduzco parties and the declaratory relief parties were required to attend. Judge Gamer expressed the opinion that coverage existed for Verduzco's claims, and encouraged USAA to settle the matter. No settlement was reached.

Trial in USAA's declaratory relief action was set before trial of the Verduzco action, and although USAA sought to delay trial of the declaratory

relief claims until after the Verduzco action was tried, the attorneys for Verduzco and Dalrymple opposed such a stay and it was denied. Attorney Hurst's opposition to the stay was based on the statement that Verduzco would dismiss his action if there were no insurance, so judicial economy might be served if the stay motion were denied.

Dalrymple prevailed in the declaratory relief action. The trial court determined Dalrymple lacked the ability to recognize her conduct was wrongful, and found the policy terms "occurrence" and "accident" were ambiguous because they did not address circumstances in which the insured suffered from severe mental disease. The court thus concluded USAA had a duty to defend and indemnify Dalrymple for Verduzco's claims. Attorney fees were awarded, as explained *post.* Judgment determining coverage was entered on June 8, 1990.

Shortly before the trial in the Verduzco action, Attorney Hurst stipulated to liability in exchange for a covenant not to execute against Dalrymple personally beyond the policy limits. This had the effect of giving up the firefighter's rule defense. Hurst testified that this was a tactical decision made in cooperation with USAA.

Thereafter, on September 24, 1990, Verduzco obtained a verdict of $88,110.76 damages.[2] USAA then fully indemnified Dalrymple for this judgment. Although USAA did not appeal the declaratory relief judgment as to the coverage determination, it did appeal the judgment insofar as it awarded Dalrymple $44,164.50 attorney fees. This appeal of the attorney fees issue in the declaratory relief matter was successful, as this court found the award of fees was premature since no bad faith finding had been made in the declaratory relief action. (*United Services Auto. Assn.* v. *Dalrymple* (1991) 232 Cal.App.3d 182, 185-186 [283 Cal.Rptr. 330] [our prior opinion].)

The bad faith action on Dalrymple's cross-complaint seeking compensatory and punitive damages went to trial on August 3, 1992. In the joint disposition conference statement, Dalrymple and USAA stipulated that USAA paid all of the attorney fees incurred in Dalrymple's defense in the Verduzco matter, and paid the entire amount of the judgment against Dalrymple in the Verduzco matter.

Before trial, USAA sought judgment on the pleadings based on the stipulation that USAA had defended and indemnified Dalrymple in the

---

[2]Verduzco's demand for settlement before trial was $90,000, within USAA's policy limits; USAA made a series of offers culminating in a $75,000 offer which was rejected.

Verduzco action. It contended there had been no breach of contract as a matter of law and, accordingly, no breach of the implied covenant of good faith and fair dealing had occurred. It also argued there was no attorney fees entitlement since Dalrymple had incurred such fees in defense of the declaratory relief action, rather than in bringing her own action. The motion for judgment on the pleadings was denied.

A two-week trial followed, with Dalrymple's counsel attempting to show USAA acted unreasonably in pursuing the declaratory relief action and in failing to settle the Verduzco action before trial. Dalrymple's counsel argued that because of the coverage dispute during the time the declaratory relief action was pending, she had been exposed to judgment in the Verduzco matter in excess of policy limits, and had also been exposed to punitive damages. Dalrymple herself did not appear or testify at trial. Her evidence in support of her claim of breach of the implied covenant mainly sought to show that USAA personnel and attorneys had knowledge of her severe mental condition and her inability to form criminal intent, but nevertheless took the position that there was no coverage because her actions were intentional and the shooting had not been an accident; she also claimed USAA had otherwise failed to act reasonably in formulating its coverage position regarding the intentional acts exclusion and the "occurrence" term of the policy. She further sought to show that USAA had not acted reasonably at a settlement conference in the Verduzco matter when it continued to dispute coverage despite the settlement judge's position that coverage existed.

Trial testimony on the cross-complaint included that of several attorney witnesses, who gave their interpretations of case law, policy terminology, and the coverage obligations of USAA. Dalrymple's insurance expert testified that, in his opinion, there were no adequate grounds for USAA to file the declaratory relief action, there had not been a proper investigation, and the case had not settled or been resolved early enough. USAA presented contrary expert opinion testimony regarding the absence of insurance coverage obligations.

At the close of Dalrymple's case-in-chief, USAA moved for nonsuit. The motion was granted as to the causes of action for breach of contract and breach of fiduciary duty. However, the motion was denied as to the cause of action for breach of the implied covenant of good faith and fair dealing. The trial court's theory was that USAA might be found liable on the basis of wrongfully pursuing declaratory relief and failing to settle the Verduzco action before trial. In denying the motion, the trial court commented:

"USAA, in considering the unique . . . circumstances surrounding this claim can certainly take the position that if it doesn't seek declaratory relief it's not getting a clear judicial determination of its position. If it does it runs a risk of being accused . . . of trying to escape responsibility and abandon its insured.

"But the issue here is not whether the filing of the declaratory relief action . . . solves the problem that's presented by this lawsuit. I think that there are cases which establish . . . the fact that an insurance company either settles a claim, pays a claim, pays a judgment, pays an excess judgment, does not give it the right to avoid all liability for its conduct in the handling of a claim.

"The implied covenant of good faith and fair dealing has to do with a variety of events that may occur during the course . . . of that claim, including whether or not the claim was properly investigated, whether the claim was properly evaluated, and that's the issue in this case. . . . I think that's a question for the trier of fact, looking at the totality of the circumstances to decide whether USAA complied with its tort responsibility to act in good faith. . . .

". . . The filing of the declaratory relief action in my view is just one of the factors in consideration of whether or not that covenant was breached. [The] case doesn't begin and end with that. And it doesn't begin and end with the ultimate payment . . . of the judgment against [Ms.] Dalrymple."

The trial court also found unmeritorious USAA's other motions for non-suit and directed verdict in which it was argued that attorney fees were not recoverable as bad faith damages if incurred in defending a declaratory relief action rather than in affirmatively seeking to compel payment of policy benefits.

In discussing jury instructions with counsel concerning whether USAA had proper cause to dispute coverage by pursuing the declaratory relief action, the trial court commented that the whole case had been argued and presented by Dalrymple to the jury on the theory that the insurer did not have such proper cause. The jury was thus required to determine whether the insurer's coverage position gave it proper cause to file the declaratory relief action.

The trial judge then instructed the jury that if it found a breach of the implied covenant of good faith and fair dealing, it must award to Dalrymple such damages as were legally caused by such breach, including attorney fees

in the amount of $44,164.50, as well as any other damages it found had been suffered. Dalrymple also sought damages for emotional distress and punitive damages. The jury rendered a verdict finding a breach of the covenant of good faith and fair dealing, and awarded compensatory damages of $44,164.50. The jury found USAA had not reasonably relied on the advice of its attorney, Mr. Goates, but had not acted with malice or oppression toward Dalrymple. Neither party filed posttrial motions, and both parties timely appealed the judgment.[3]

## DISCUSSION

When an insurer's decision to pursue declaratory relief regarding coverage under a policy is challenged by way of a later bad faith action, shall it be the court or the jury which decides if the insurer acted with proper cause in filing the declaratory relief action? For the reasons explained below, we conclude that where the essential facts on which the insurer acted are not disputed, it is the trial court which must make this determination.

## I

### *Proper Cause Determination*

### A

### *Standard of Review*

The parties do not agree on the applicable standard of review. USAA argues this court should review de novo the trial court's legal determinations in denying the motions for judgment on the pleadings, nonsuit, and directed verdict regarding the breach of the implied covenant theory. In particular, USAA contends that because nonsuit was granted as to the breach of contract cause of action, so too should it have been granted as to the breach of the implied covenant cause of action because of the stipulation that the benefits under the policy were paid. In contrast, Dalrymple argues that the usual substantial evidence standard of review should apply to this judgment after jury verdict.

---

[3]Pursuant to Dalrymple's ex parte motion, the trial court amended the judgment to add prejudgment interest, to correct claimed mistake, inadvertence or excusable neglect. Dalrymple's cross-appeal challenges the amount of this prejudgment interest award, and also contends additional damages for emotional distress should have been awarded on this record. She also attacks the trial court's dismissal of her fraud allegations regarding punitive damages. Because of our resolution of the main issue presented on the appeal, these contentions on the cross-appeal have become moot.

■ In general, where bad faith is alleged, a jury is empowered to resolve conflicting evidence regarding an insurer's conduct and motives. (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 921 [148 Cal.Rptr. 389, 582 P.2d 980].) Bad faith in this context is said to be conduct violating community standards of decency, fairness or reasonableness. (*Id.* at pp. 921-922, fn. 5.) An appellate court reviews a judgment on such a jury verdict under the substantial evidence standard. (*Id.* at p. 922.)

Although an insurer's bad faith is ordinarily a question of fact to be determined by a jury by considering the evidence of motive, intent and state of mind, "[t]he question becomes one of law . . . when, because there are no conflicting inferences, reasonable minds could not differ. [Citations.]" (*Walbrook Ins. Co.* v. *Liberty Mutual Ins. Co.* (1992) 5 Cal.App.4th 1445, 1454-1455 [7 Cal.Rptr.2d 513].) Thus, the issue of bad faith may, in specific instances, be treated as an issue of law. (*Id.* at p. 1457.) An appellate court reviews a judgment on an issue of law de novo. (*Crocker National Bank* v. *City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278]; *Sanders* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1977) 65 Cal.App.3d 630, 648-649 [135 Cal.Rptr. 555].)

The touchstone of our discussion of standard of review must be this court's prior opinion in *United Services Auto. Assn.* v. *Dalrymple, supra,* 232 Cal.App.3d at pages 186-187. There, we reviewed the declaratory relief judgment which had also awarded bad faith attorney fees, and concluded it did so prematurely, because there had not yet been a finding of bad faith. Discussing the upcoming bad faith trial on this cross-complaint, we noted that USAA had not yet had an opportunity to produce evidence disputing the allegations of bad faith. We explained: "Because an insurer can erroneously dispute coverage without acting in bad faith [citations] the reasonableness of the position adopted by USAA remains to be tried as part of the severed action on the cross-complaint. [Citation.]" (*United Services Auto. Assn.* v. *Dalrymple, supra,* 232 Cal.App.3d at pp. 186-187.)

To apply this reasonableness standard, we must focus upon the precise issue being decided. The trial court stated it was submitting to the jury the issue of whether USAA had proper cause to file the declaratory relief action as a means of disputing coverage. This proper cause determination was part of the overall bad faith liability issue submitted to the jury. Specifically, this issue had been earlier presented to the trial court through USAA's motions for nonsuit or a directed verdict, which the court denied. ■ Such orders granting nonsuit or directed verdict "may be made only when there is *no substantial conflict in the evidence. In ruling on the motion, the court does*

*not consider credibility of witnesses* but gives to the evidence of the party against whom it has directed *all its legal value*, indulges every legitimate *inference* from such evidence in favor of that party, and *disregards conflicting evidence*." (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 409, p. 412, original italics.)

With these rules in mind, we turn to the overall test for bad faith liability, and how the proper cause determination works within it.

B

*Breach of the Implied Covenant*

In *Love* v. *Fire Ins. Exchange, supra,* 221 Cal.App.3d at pages 1151-1152, this court set forth the requirements to establish breach of the implied covenant: "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause. [Citations.][4]"

■ Here, although it was stipulated that USAA paid attorney fees incurred in defending the Verduzco litigation and indemnified Dalrymple for the Verduzco judgment, Dalrymple contends these payments were not enough to satisfy USAA's implied covenant duties of good faith and fair dealing because of the insurer's reservation of rights pending the declaratory relief action, and because USAA declined to settle the Verduzco matter before it went to trial. Dalrymple also contends she was damaged by loss of peace of mind and by potential exposure to an excess verdict in the Verduzco action, and possibly punitive damages, all attributable to delay caused by the insurer's breach of the implied covenant. (See *Bodenhamer* v. *Superior Court* (1987) 192 Cal.App.3d 1472, 1477-1479 [238 Cal.Rptr. 177].) Thus, she contends that even though she received tangible policy benefits of attorney fees and indemnification of the judgment, she was deprived of intangible policy benefits.

To assess these claims, the reasonableness of the insurer's conduct must be addressed regarding (1) the filing and pursuing of the declaratory relief

---

[4]In a footnote at this point, the court stated: "Our interpretation that a plaintiff must show, at a minimum, benefits were delayed or withheld, accords with the analysis of the commentators: 'Where benefits are fully and promptly paid, no action lies for breach of the implied covenant—no matter how hostile or egregious the insurer's conduct toward the insured may have been prior to such payment. I.e., absent an actual withholding of benefits due, there is no breach of contract and likewise no breach of the insurer's implied covenant. [Citation.]' [Citation.]" (221 Cal.App.3d at pp. 1151-1152, fn. 10, italics omitted.)

action, and (2) the failure to settle the Verduzco action at any time while it was pending, based on the knowledge USAA had at any particular time; such failure to settle could potentially have caused adverse effects on the insured. (*United Services Auto. Assn.* v. *Dalrymple, supra,* 232 Cal.App.3d 182.) Before we reach those questions (in parts IIB and IIC, *post*), several preliminary issues of a technical nature must be addressed.

## C

### *Nonsuit re: Breach of Contract—Effect?*

Before discussing the standards which should guide the trial court in making a ruling on "proper cause" to dispute coverage in this bad faith context, we first reject USAA's threshold argument that the nonsuit granted on the breach of contract action necessarily should have resolved the nonsuit request on the breach of the implied covenant cause of action as well. USAA relies on language in this court's opinion in *Love* v. *Fire Ins. Exchange, supra,* 221 Cal.App.3d at pages 1151-1152, footnote 10, to the effect that "a plaintiff must show, at a minimum, benefits were delayed or withheld" to show bad faith liability. In its opening brief, USAA represents that the parties stipulated that USAA "fully and promptly" paid attorney fees incurred in defending the Verduzco litigation and indemnified Dalrymple for the Verduzco judgment. We first note that the actual terms of the stipulation did not include this "fully and promptly" qualifier; it was merely stated that the fees and judgment were "paid." In any case, Dalrymple continues to contend these admitted payments were not enough to satisfy USAA's duty of good faith and fair dealing because they were made under a reservation of rights, pending the resolution of the declaratory relief action. Dalrymple also contends she suffered loss of peace of mind due to the coverage dispute, and should be compensated for the same through damages for breach of the implied covenant.

In light of these allegations, USAA's attempt to lump all Dalrymple's theories together disregards well-accepted distinctions between an insurer's potential contract and tort liability to an insured. Although an insurer has contractual responsibilities to its insured, it also has an obligation, imposed by law, "to act fairly and in good faith" in discharging those contractual responsibilities. (*Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d at p. 920.) "[W]hen an insurer 'fails to deal fairly and in good faith with its insured by refusing, *without proper cause,* to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.' [Citation.]" (*Ibid.,* italics added.)

As one noted commentator explains: "There may be cases in which the insurer's delay in paying the claim or other misconduct causes special harm to the insured even though the claim is ultimately paid or settled. Such payment fulfills the insurer's contractual obligations. However, under appropriate circumstances, tort liability may still be imposed for the insurer's misconduct apart from performance of its contract obligation." (Croskey et al., Cal. Practice Guide: Insurance Litigation 2 (The Rutter Group 1995) ¶ 12:812, pp. 12C-3 to 12C-4, italics omitted.)

Moreover, it is firmly established that an erroneous interpretation of an insurance contract by an insurer does not necessarily result in tort liability for breach of the covenant of good faith and fair dealing; an insurer's conduct must also have been unreasonable in order to result in tort liability. (*Brandt* v. *Superior Court* (1985) 37 Cal.3d 813, 819 [210 Cal.Rptr. 211, 693 P.2d 796]; *United Services Auto. Assn.* v. *Dalrymple, supra*, 232 Cal.App.3d at p. 186.)

In *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 35-37 [44 Cal.Rptr.2d 370, 900 P.2d 619], the Supreme Court held that an insured could not state a cause of action for either breach of the implied covenant of good faith and fair dealing or a statutory violation of unfair business practices (Ins. Code, § 790.03), where the policy did not provide coverage in the first instance. The Supreme Court adopted the reasoning of *Love* v. *Fire Ins. Exchange, supra*, 221 Cal.App.3d at pages 1151-1153: "It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." "In sum, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement. [Citation.]" (*Waller* v. *Truck Ins. Exchange, Inc., supra*, 11 Cal.4th at p. 36.)

Unlike the facts in *Waller*, in Dalrymple's case the insurance policy was found in the declaratory relief action to provide coverage, and policy benefits were accordingly paid. Dalrymple contends, however, that the policy benefits were not paid in a sufficiently timely manner, so that benefits were effectively "withheld" during the period of time representing the declaratory relief litigation and its aftermath. She thus claims USAA's conduct frustrated her rights to the benefits of the insurance agreement: receiving full and prompt payment of policy benefits. (*Love* v. *Fire Ins. Exchange, supra*, 221 Cal.App.3d at pp. 1151-1152, fn. 10.) On this set of allegations, we do

not believe *Waller* disallows such a cause of action (even though, as we later explain, we find it unmeritorious here) because there was policy coverage found here, and Dalrymple has gone on to challenge the manner in which the benefits were paid. Nor does *Waller* indicate a litigant such as Dalrymple has only an administrative remedy in Insurance Code section 790.03; her bad faith cause of action has sufficient contractual underpinnings, unlike the insureds' actions in *Waller* (*supra*, 11 Cal.4th at pp. 36-37).

 In this case, although USAA fulfilled its contractual duties, it did so under a reservation of rights. It is at least arguable that pursuing a declaratory relief action regarding coverage could be done for reasons indicating bad faith may be present: e.g., if there were no proper cause to dispute coverage, *and* if more than an erroneous interpretation of a policy (e.g., a willfully misguided one) were concerned. We conclude that for these purposes, Dalrymple sufficiently pleaded and argued such extracontractual liability as to make clearly distinguishable the issues regarding these two theories of recovery. The nonsuit ruling on the contract theory is not dispositive.

## D

### *Malicious Prosecution Theory*

In *State Farm Mut. Auto. Ins. Co. v. Superior Court* (1991) 228 Cal.App.3d 721, 725-727 [279 Cal.Rptr. 116], this court discussed the similarities between bad faith insurance actions and malicious prosecution actions for pleading purposes. Holding that an insurer's defense of advice of counsel was not "new matter" which had to be specifically pleaded in an answer, we found "no significant distinction between malicious prosecution cases and insurance bad faith cases in the pleading context presented here." (*Id.* at p. 726, fn. omitted.) We explained: "In a malicious prosecution action, the plaintiff must prove (1) the underlying suit was commenced at the direction of the defendant and pursued to a legal termination in the plaintiff's favor; (2) the defendant filed the underlying suit without probable cause; and (3) the suit was initiated with malice. [Citation.] *Similarly, the plaintiff in an insurance bad faith action must prove the defendant acted 'without proper cause'* [*citation*], and with malice. [Citation.]" (*State Farm Mut. Auto. Ins. Co. v. Superior Court, supra*, 228 Cal.App.3d at pp. 726-727, italics added.)

In the malicious prosecution context, the Supreme Court in *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 868 [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon Appel*) concluded the trial court had erroneously allowed the jury to determine whether there was probable cause to institute a prior

action (the basis of the malicious prosecution action) and that, instead, where there is no dispute as to the facts on which an attorney acted in filing a prior action, "the question whether there was probable cause to institute the prior action is purely a legal question, to be determined by the trial court on the basis of whether, as an objective matter, the prior action was legally tenable or not." (*Id.* at p. 868.) However, in some cases, there may be conflicting evidence about the facts upon which the defendant acted in bringing the prior action; in such cases, the jury must resolve any controverted facts about the defendant's knowledge before the trial court may make a legal determination of the issue of probable cause. (*Id.* at p. 877.) The jury thus resolves any threshold questions of the defendant's factual knowledge or belief. (*Id.* at p. 881.)

In contrast, where such threshold questions are absent, the trial court makes an objective determination of the reasonableness of the defendant's conduct, "i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable." (*Sheldon Appel, supra,* 47 Cal.3d at p. 878.) The trial court determines as a matter of law if the undisputed facts warrant an inference of probable cause. (*Id.* at p. 880.) The matter is to be judged under a "reasonable attorney" standard: Would such person have thought the claim tenable? (*Id.* at p. 884.) Moreover, where the issue of probable cause is properly for the trial court, expert testimony on that issue is inadmissible. (*Ibid.*)

Although the Supreme Court found in *Sheldon Appel, supra,* 47 Cal.3d 863 that the trial court erred by submitting the probable cause issue to the jury, and reversed the judgment on that basis, the court did not find it necessary to remand the matter to the trial court. The appellate court was in as good a position as the trial court to resolve the determinative legal question, i.e., probable cause to file the underlying proceeding. (*Id.* at pp. 884-885.) The Supreme Court followed this procedure because there was no dispute as to the facts of which the defendant law firm was aware when it brought the underlying prior action on its client's behalf. (*Ibid.*)

■ As in the malicious prosecution context, a determination of an insurer's liability for bad faith requires a close examination of the validity and good faith of underlying declaratory relief litigation. (*State Farm Mut. Auto. Ins. Co.* v. *Superior Court, supra,* 228 Cal.App.3d at p. 727.) In both cases, the success of the later action is premised on a finding the earlier action was inappropriately pursued, under certain established criteria. Whether such underlying litigation was justified in the bad faith context under the key criterion, proper cause, is clearly not a matter within the scope

of experience of a lay jury. Rather, the trial court is best equipped to assess whether the insurer had proper cause to seek a ruling on coverage under the particular circumstances. For these reasons, we believe the procedure outlined in *Sheldon Appel, supra,* 47 Cal.3d 863 is an appropriate guide for resolving the issues in our case. For these purposes, there is "no significant distinction between malicious prosecution cases and insurance bad faith cases in the [procedural] context presented here." (*State Farm Mut. Auto Ins. Co.* v. *Superior Court, supra,* 228 Cal.App.3d at p. 726, fn. omitted.)[5]

Under such an approach, we must first decide if the record reveals disputed facts about USAA's knowledge in filing the declaratory relief coverage action, such that a jury would be required to resolve such conflicting evidence to enable the trial court to make the probable or "proper cause" determination of the justification for disputing coverage in that manner. Secondly, we (or in future such cases, the trial court) must determine if the underlying declaratory relief action to resolve coverage was legally tenable on the known facts, under the view of a reasonable attorney. Such a determination is made under an objective standard, not considering whether the evidence shows the insurance coverage attorneys subjectively felt they were doing the right thing. (*Sheldon Appel, supra,* 47 Cal.3d at pp. 877-881, 884-885.) In short, allegations of bad faith raising such technical claims require court, not jury, resolution of the legal issues involved.

## II

### *Application of Rules*

Using the procedure outlined above, we first discuss the state of the record concerning USAA's knowledge of the facts on which it based its decision to pursue declaratory relief regarding coverage. We then discuss whether the declaratory relief action should have been found legally tenable as a matter of law under the reasonable attorney standard. Assuming it was tenable in that sense, we then evaluate whether there was any remaining evidence of bad faith which required jury resolution. Throughout, Dalrymple's contention is that although her attorney fees for defense counsel and *Cumis* counsel were regularly paid by USAA, and although she was eventually indemnified for the Verduzco judgment, USAA's pursuit of the declaratory relief action *and* its failure to settle the Verduzco action constituted impermissible delay in providing policy benefits, in violation of the covenant of good faith and fair dealing.

---

[5] In *Camarena* v. *Sequoia Ins. Co.* (1987) 190 Cal.App.3d 1089, 1097 [235 Cal.Rptr. 820], this court held an underlying declaratory relief action could support a later malicious prosecution action, if the other necessary elements for malicious prosecution were shown.

A

*State of the Record*

The facts regarding Dalrymple's mental state at the time of the incident were not disputed. USAA had information from a number of sources that Dalrymple had a delusional disorder of a persecutory type, in an extreme degree. This information came from Navy psychiatric reports made immediately after the incident and a Navy examination into her mental condition in connection with court-martial proceedings, with findings dated November 18, 1987. The Navy psychiatrist concluded that Dalrymple sincerely and earnestly believed the people she shot at had made an unlawful entry into her home and were going to physically hurt her. She believed the intruders shot first, and she did not intend to hurt anyone. USAA received these medical records and court-martial records by September 1988, the month before the declaratory relief action was filed. Eventually, Dalrymple was discharged from the Navy because of mental incapacity, and a finding was made she was not capable of criminal intent at the time.

In evaluating the significance of Dalrymple's mental state for coverage purposes, USAA advanced varying theories. In May 1988, approximately five months before it filed its declaratory relief action, USAA's coverage counsel drafted a letter which discussed existing case law and which concluded the lack of an "accident" within the "occurrence" term of the policy precluded the potential of coverage. Coverage counsel recommended defending under a reservation of rights pending a coverage determination. USAA followed this advice. By contrast, in August 1988, USAA claims file documents reflected the conclusion that Dalrymple was in full control of her faculties and her acts were intentional. At the July 1989 Verduzco settlement conference, USAA contended that Dalrymple's actions were intentional, for purposes of the coverage dispute over the "occurrence" provision.

Once the declaratory relief action was decided, in June 1990, USAA paid the September 1990 Verduzco judgment on behalf of Dalrymple. Rather than protracting the matter further, USAA accepted the declaratory relief decision and did not appeal the judgment, except for the attorney fees issues.

At the 1992 trial on the bad faith cross-complaint, Dalrymple did not appear or testify. There was evidence that she did not do so because she feared that if she returned to the State of California, she would be physically harmed. There was no direct evidence of any emotional distress she may have suffered from the pendency of the declaratory relief litigation or the coverage dispute. However, in response to a hypothetical question, a psychiatrist who evaluated her testified that Dalrymple, a person with a mental

disorder, might be vulnerable to aggravation of her mental condition if she learned that her insurer was disputing coverage.

Based on this record, we conclude the facts on which USAA acted in deciding to file and pursue the declaratory relief action were undisputed. Although USAA advanced varying theories as to why coverage did not exist, that did not create a factual dispute regarding what it knew or did not know when it filed the declaratory relief action. Likewise, because proper cause to file a declaratory relief action is evaluated against an objective standard (see *Sheldon Appel, supra,* 47 Cal.3d at pp. 877-881, 884-885) and the insurer's motive in filing a declaratory relief action is irrelevant, the presence of a factual dispute concerning USAA's motives in deciding to initiate and pursue the declaratory relief action would not present issues requiring jury resolution.[6] Accordingly, this record presents a proper context for a ruling as a matter of law on the issue of whether the declaratory relief action was legally tenable.

### B

*Legally Tenable Declaratory Relief Action?*

■ "Absent other facts, the mere filing of an action to declare the insurer's rights and duties relative to an insurance policy cannot form the basis of breach of the duty of good faith and fair dealing. Assuming the insurer has not otherwise abandoned, compromised or rejected the insured's claim, an action seeking declaratory relief does not in any way frustrate the insured's enjoyment of his contract rights. [Citation.] Moreover, the insurer has a statutory right to seek such a declaration of his rights under the contract. (Code Civ. Proc., § 1060.)" (*Atlas Assurance Co.* v. *McCombs Corp.* (1983) 146 Cal.App.3d 135, 150 [194 Cal.Rptr. 66].) In that case, it was argued that the breach of the duty of good faith and fair dealing occurred through the insurer's vacillations in conducting the defense of its insured in an underlying action. (*Ibid.*) No such vacillations are alleged here, although Dalrymple does contend that the declaratory relief action was not brought in good faith. As discussed above, we analyze this issue in light of whether the trial court should have concluded as a matter of law that the declaratory relief action was brought with proper cause to dispute coverage.

■ "It is now clear under California law that an insurer's erroneous failure to pay benefits under a policy does not necessarily constitute bad

---

[6]If the court determines proper cause did not exist, motive evidence would be relevant to prove other issues such as malice.

faith entitling the insured to recover tort damages. '[T]he ultimate test of [bad faith] liability in the first party cases is whether the refusal to pay policy benefits was unreasonable.' [Citations.] In other words, 'before an [insurer] can be found to have acted tortiously, i.e., in bad faith, in refusing to bestow policy benefits, it must have done so "without proper cause." ' [Citations.]" (*Opsal* v. *United Services Auto. Assn.* (1991) 2 Cal.App.4th 1197, 1205 [10 Cal.Rptr.2d 352], italics omitted.) Where there is a genuine issue as to the insurer's liability under the policy under California law, bad faith liability cannot be imposed. (*Ibid.*) Such a genuine issue as to liability may be created by uncertainties in controlling case law. (*Ibid.*)

 Under the approach of *Sheldon Appel, supra,* 47 Cal.3d 863 in the malicious prosecution context, the trial court is required to make an objective determination of probable cause by deciding the reasonableness of the defendant's conduct; the court determines whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable from the viewpoint of a reasonable attorney. (*Id.* at pp. 878, 885-886.) To analyze this record, we must interpret the policy term "occurrence" in light of the evidence known about Dalrymple's mental state.[7]

Under Dalrymple's renter's protection policy, liability coverage was provided for damages because of bodily injury caused by an occurrence. "Occurrence" was defined as "an accident . . . which results, during the policy period, in: bodily injury . . . ." The policy excludes liability coverage for bodily injury "expected or intended by the insured." This "occurrence" terminology was recently interpreted in *Collin* v. *American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 810 [26 Cal.Rptr.2d 391], as follows:

"California courts interpreting 'occurrence' have focused exclusively on the insured's intent to perform the act which gives rise to liability, not on the insured's state of mind. If the claimant's injuries did not result from an 'accident,' it does not matter whether the insured expected or intended his conduct to cause any harm.

"The California Supreme Court has defined the term 'accident' as ' " 'an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause.' " ' [Citation.] Put differently, it is 'something out of the usual course of events . . . which happens suddenly and unexpectedly and without design.' [Citation.] This common law construction of the term 'accident' becomes part of the policy and precludes any assertion that the term is ambiguous. [Citation.]

[7]"Where the underlying facts are not disputed, construction of an insurance policy presents a question of law. The appellate court is not bound by the trial court's interpretation. Rather, it must independently interpret the language of the insurance contract. [Citation.]" (*Merced Mutual Ins. Co.* v. *Mendez* (1989) 213 Cal.App.3d 41, 45 [261 Cal.Rptr. 273].)

"Because the term 'accident' refers to the insured's intent to commit the act giving rise to liability, as opposed to his or her intent to cause the consequences of that act, the courts have recognized—virtually without exception—that deliberate conduct is not an 'accident' or 'occurrence' irrespective of the insured's state of mind." (21 Cal.App.4th t p. 810)

In *Merced Mutual Ins. Co.* v. *Mendez, supra,* 213 Cal.App.3d at pages 48-50, the court rejected an argument that an accident has occurred "even if the acts causing the alleged damage were intentional as long as the resulting damage was not intended." (*Id.* at p. 48.) In that case, the insured admitted intentionally engaging in sexual activity with a Ms. Peery, but although the insured claimed in defense of an assault and battery action by Peery that the sexual encounter was consensual, Ms. Peery claimed it was forcible. The insured sought to have his homeowner's insurer defend him in the Peery action under a policy which provided liability coverage for bodily injury caused by an occurrence, which was defined as an accident resulting in bodily injury. (*Id.* at p. 44.) The court analyzed these facts as follows: "In the present case, Mendez admits intentionally engaging in sexual activity with Ms. Peery. This sexual activity, which Ms. Peery alleges occurred against her will, forms the basis of her action against Mendez. All of the acts, the manner in which they were done, and the objective accomplished occurred exactly as appellant intended. No additional, unexpected, independent or unforeseen act occurred. 'Whatever the motivation,' because Mendez's conduct was 'calculated and deliberate' [citation], it was not an 'accident' and thus not an 'occurrence' within the meaning of the policy provision. Because the conduct was not an 'occurrence' the insurer has no duty to defend an action arising out of this conduct." (*Merced Mutual Ins. Co.* v. *Mendez, supra,* 213 Cal.App.3d at p. 50.)

Consistent with this thinking, in the May 1988 coverage opinion USAA obtained from Goates, he commented "pointing a gun is an intentional act regardless of one's state of mind at the time," and he further stated "there is no indication in the police report that the discharge of the weapon was accidental." He bolstered this conclusion with analysis of case law interpreting the "occurrence" term of the policy, including *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558 [334 P.2d 881] and *Commercial Union Ins. Co.* v. *Superior Court* (1987) 196 Cal.App.3d 1205 [242 Cal.Rptr. 454], dealing with the definition of "accident."[8]

At trial, Goates testified that his opinion was Dalrymple's mental illness was irrelevant to the issue of "accident," as the evidence showed she did not

[8]The declaratory relief action sought interpretations of not only the "occurrence" term of the policy, but also the intentional acts exclusion of Insurance Code section 533. Although USAA never abandoned that claim, it did not vigorously pursue the intentional acts exclusion,

drop the gun or otherwise mistakenly shoot. He testified "[m]y conclusion was that the discharge of the weapon was not accident[al], that she knew that she was shooting someone. She knew she was shooting a dog. The only time she discharged the weapon was when there was somebody or something to shoot at. . . . She wasn't just firing randomly. She was firing only when there was a target." Although the evidence showed she had psychotic reasons for shooting, it was a reasonable interpretation of the evidence to conclude the shooting itself was calculated and deliberate and thus not accidental within the meaning of the policy provision occurrence. (See *Merced Mutual Ins. Co.* v. *Mendez, supra*, 213 Cal.App.3d at p. 50.)[9]

The opinion in *Merced Mutual Ins. Co.* v. *Mendez, supra*, 213 Cal.App.3d 41 was issued in August 1989, approximately 10 months after USAA filed its complaint for declaratory relief. The declaratory relief action went to trial in June 1990, at which time the trial court found coverage; that portion of the judgment was not appealed by USAA. Although the declaratory relief finding of coverage is not directly before us here, we believe that even though the eventual ruling was unfavorable to it, USAA had reasonable grounds under the facts known to it both to file the declaratory relief action under existing law, and to continue to pursue it, particularly in light of the issuance of the *Merced Mutual* opinion while the declaratory relief action was still pending. Under the analysis set forth in that opinion, " 'Whatever the motivation,' because [the insured's] conduct was 'calculated and deliberate' [citation], it was not an 'accident' and thus not an 'occurrence' within the meaning of the policy provision." (*Id.* at p. 50.) During all the relevant

believing it was potentially a loser. Moreover, although USAA now denies in its opening brief that it agreed to waive the firefighter's rule defense (which would have brought up intent issues), insurance defense attorney Debra Hurst testified that the insurance company representative agreed with her to this tactical move. (See fn. 1, *ante.*)

[9]In *J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009, 1026 [278 Cal.Rptr. 64, 804 P.2d 689], holding that under Insurance Code section 533 there is no liability coverage for an insured's sexual molestation of a child, the court discussed the issue of motive as distinguished from intent, making these observations: "For example, an insured may intentionally shoot another person in the head at point-blank range. Obviously, the insured (if sane) intends to injure. Whether the conduct is wrongful, however, will depend on the insured's motive [e.g., self-defense or robbery]." The *J. C. Penney* court did not decide policy coverage for an "occurrence" of sexual molestation, but suggested such an act could not be an "accident." (*Id.* at p. 1028, fn. 17.) *J. C. Penney* is distinguishable from our case because it is based on an interpretation of Insurance Code section 533; however, this language is instructive, as suggesting the harmful act of pointing and shooting at a person is not accidental even if sometimes it may be noncriminal. (Also see *Jacobs* v. *Fire Ins. Exchange* (1995) 36 Cal.App.4th 1258, 1270 [42 Cal.Rptr.2d 906], an Insurance Code section 533 case, suggesting that an insured may have the cognitive capacity to commit a willful act (shooting a gun at a victim) even if it is contended he lacked the volitional capacity to control his conduct; the court noted "aiming and shooting a gun at a person's head from a distance of a few feet, without legal justification, is inherently harmful and wrongful." (*Id.* at p. 1278.)

time periods, insurance law interpreting "occurrence" and "accident" terminology was still developing. As we noted in *Opsal* v. *United Services Auto. Assn.*, *supra*, 2 Cal.App.4th at page 1205, where there is a genuine issue as to the insurer's liability under the policy under California law, e.g., created by uncertainties in controlling case law, bad faith liability cannot be imposed. (*Ibid.*)

Here, the trial court was presented with USAA's motions for nonsuit or directed verdict; such motions may be granted when there is no substantial conflict in the evidence, when the evidence of the party against whom it has directed has been given all its legal value. (7 Witkin, Cal. Procedure, *supra*, Trial, § 409, p. 412.) On this record, presented with these motions, the trial court should have ruled as a matter of law, and we now determine, there was a genuine issue as to coverage under this policy and USAA had proper cause at each stage of the proceedings to pursue a coverage determination: to bring a declaratory relief action, and to maintain such an action in light of recently issued case law (i.e., *Merced Mutual Ins. Co.* v. *Mendez*, *supra*, 213 Cal.App.3d 41). (*Opsal* v. *United Services Auto. Assn.*, *supra*, 2 Cal.App.4th at pp. 1205-1206.)[10] Hence, there could be no bad faith liability on this basis. Moreover, it is immaterial that USAA decided for its own reasons not to appeal the declaratory relief judgment, and that it complied with the judgment by indemnifying Dalrymple. Such conduct was not an admission of any lack of merit of its previous position regarding coverage. In any case, as this court observed in our prior opinion in this case, *United Services Auto. Assn.* v. *Dalrymple*, *supra*, 232 Cal.App.3d at page 186, an insurer can erroneously dispute coverage without acting in bad faith.

## C

### Other Alleged Acts of Bad Faith

Although we have concluded USAA had proper cause to dispute coverage by bringing and prosecuting the declaratory relief action, Dalrymple's allegations of bad faith also include the failure to settle the Verduzco litigation at any time while it was pending. It is argued that this failure to settle harmed her by delaying policy benefits to which she was entitled,

---

[10]Although USAA also claims it was error for the trial court to deny its motion for judgment on the pleadings, we disagree. It was appropriate for the trial court to allow evidence to be presented regarding the facts under which USAA was operating in seeking its coverage determination, in order to decide if such facts were disputed and what issues might be properly sent to the jury.

causing her loss of peace of mind, and potentially exposing her to an excess verdict.[11]

An insurer has an obligation, sounding in both contract and tort, under the covenant of good faith and fair dealing, to accept a reasonable settlement offer on behalf of its insured. (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 18 [123 Cal.Rptr. 288, 538 P.2d 744].) Generally, an insurer is required to settle a claim "[w]hen there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits." (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 659 [328 P.2d 198, 68 A.L.R.2d 883].)

Evaluating the evidence presented at the bad faith trial, we are satisfied that no finding of bad faith on this separate theory of liability is supported by this record. At the July 1989 settlement conference in *Verduzco*, while the declaratory relief action was pending, the settlement judge preliminarily evaluated the case at $100,000 policy limits potential, but stated she would press Verduzco to accept $90,000 to avoid further expenses. At that time, USAA was offering $22,000 to settle. After the declaratory relief action was resolved, the file shows that as of September 9, 1990, Verduzco was expecting to recover policy limits, and would not consider less than $90,000 in settlement. At that time, USAA was offering $51,000 to $65,000 to settle the matter. Verduzco was demanding $90,000 in settlement as of September 12, 1990, and USAA was offering $75,000. This offer was not accepted and Verduzco ultimately recovered a jury verdict of $88,110.76. Thus, the record does not support a claim that Dalrymple was actually exposed to an excess verdict during the relevant time period.

Moreover, until shortly before trial, there was still a possibility Verduzco would recover nothing due to the operation of the firefighter's rule, and the settlement value of the case was clearly affected by that possibility. (See fn. 1, *ante.*) Further, the three-month delay between the declaratory relief trial and the Verduzco trial did not enhance any exposure to punitive damages that Dalrymple would otherwise have had, in light of the uncertainty about her mental state regarding malice or oppression. (Civ. Code, § 3294.)

---

[11]Dalrymple also generally contends that USAA misrepresented its position on coverage by claiming without factual support that the insured's acts were intentional and she was mentally competent at the time of the incident. As we discussed in part IIA, *ante*, USAA's legal analyses of the facts of the incident (whether the shooting was intentional or accidental) during the coverage dispute were part and parcel of the "proper cause" determination, and should not be viewed as independently actionable acts of bad faith.

It is also noteworthy that Dalrymple did not present any damage evidence. For example, there was no evidence she actually suffered any loss of peace of mind because of USAA's actions, sought medical treatment for such damage, or suffered any consequential damages because of delay or possible excess exposure. Instead, in closing argument, her counsel simply suggested to the jury she was entitled to "something for the way in which she was dealt with," not a huge amount but a "reasonable" amount, which he did not specify and for which he cited no supporting evidence.[12] On this record, there is insufficient evidence to require remand for jury trial of issues such as whether USAA's actions in attempting to settle the claim at the above-mentioned figures were unreasonable, or whether the short delay between the declaratory relief judgment and the Verduzco indemnification was unjustified so as to give rise to potential bad faith liability.

We wish to emphasize that by discussing the failure to settle the Verduzco action separately from the declaratory relief proper cause issue, we do not mean to suggest that an insurer is relieved of an ongoing obligation to assess for settlement purposes both the liability and coverage aspects of a third party claimant's action against its insured, merely because the insurer is pursuing a declaratory relief action regarding coverage. ▇ "Certainly, the implied covenant of good faith and fair dealing is a strong incentive to an insurer to act in a reasonable manner in settling claims within policy limits in appropriate situations." (*Camelot by the Bay Condominium Owners' Assn. v. Scottsdale Ins. Co.* (1994) 27 Cal.App.4th 33, 53 [32 Cal.Rptr.2d 354].) Nevertheless, an insurer does not act in bad faith by refusing to meet a settlement demand where there is no policy limits exposure for claimed covered damages to establish that the settlement demand is reasonable. (*Id.* at pp. 53-54.) However, if an insurer learns of facts or law while the coverage action is pending which render that action ill-founded, the insurer may not properly maintain the action simply because it was tenable when filed. The ongoing obligation to accept a reasonable settlement offer requires no less. (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau, supra,* 15 Cal.3d at p. 18; see *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 885-886 [221 Cal.Rptr. 509, 710 P.2d 309].)

Because of our conclusions that the insurer had proper cause to dispute coverage, and its actions were not otherwise in bad faith regarding the failure to settle the Verduzco action, we need not discuss the contention by USAA that these particular attorney fees are not recoverable damages under *Brandt* v. *Superior Court, supra,* 37 Cal.3d 813. Moreover, the cross-appeal has become moot.

---

[12]The record does not disclose that Dalrymple ever actually paid or was billed for the fees attributable to her defense of the declaratory relief action.

## DISPOSITION

The judgment is reversed with directions to enter judgment in favor of appellant USAA on the cross-complaint. Each party is to bear its own costs. This disposition renders it unnecessary for this court to address the issues raised by cross-appellant Dalrymple.

Work, Acting P. J., and McDonald, J., concurred.

On December 13, 1995, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied March 14, 1996. Mosk, J., was of the opinion that the petition should be granted.