## Joseph GLAVIANO and Jodeanna Glaviano, Plaintiffs– Appellants,

v.

## ALLSTATE INSURANCE COMPANY, Defendants–Appellees.

No. 00–56754.

D.C. No. CV–99–04484–RSWL.

United States Court of Appeals, Ninth Circuit.

---

of this circuit except as may be provided by Ninth Circuit Rule 36–3.

Submitted Feb. 7, 2002.*

Decided May 13, 2002.

Before ARCHER **, O'SCANNLAIN and SILVERMAN, Circuit Judges.

## MEMORANDUM ***

Joseph and Jodeanna Glaviano (the "Glavianos") appeal the district court's grant of summary judgment to Allstate Insurance Company ("Allstate") dismissing their breach of contract and breach of the implied covenant of good faith and fair dealing claims. The Glavianos argue that the district court incorrectly interpreted their insurance policy's "dry rot," "water," "soil conditions" and "collapse" exclusions to deny them coverage for damage to their home caused by the fungus Meruliporia incrassata ("Poria"). We agree with district court that the "dry rot" provision generally excludes coverage for Poria damage, but we reverse its holdings that the "dry rot," "collapse," "water" and "soil conditions" exclusions operate as a matter

---

\* The parties' request to waive oral argument and submit the case for decision was granted in an unpublished order. Fed. R.App. P. 34(a)(1) & (a)(2)(C).

\*\* The Honorable Glenn L. Archer, Jr., Senior Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

\*\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

of law to exclude coverage for a collapse caused by hidden decay due to Poria damage. We remand because there is a genuine issue of material fact as to whether the Glavianos' loss was a "sudden and accidental" "collapse" caused by "hidden decay" under the policy's exception to its collapse exclusion. Finally, we affirm the dismissal of the Glavianos' "bad faith" denial of coverage claim.

We review a grant of summary judgment de novo. *Abdul–Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996). Interpretation of an insurance policy is a question of law. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18, 44 Cal. Rptr.2d 370, 900 P.2d 619 (Cal.1995). Because the Allstate policy at issue is an "all-risk" policy (under which all risks are covered unless specifically excluded), *Davis v. United Servs. Auto. Ass'n*, 223 Cal.App.3d 1322, 1328, 273 Cal.Rptr. 224 (Cal.Ct.App. 1990), the insurer bears the burden of proving that the peril proximately causing the loss was specifically excluded by the policy. *Strubble v. United Servs. Auto. Ass'n*, 35 Cal.App.3d 498, 504, 110 Cal. Rptr. 828 (Cal.Ct.App.1973).

## I.

The Glavianos first argue that the district court erred in interpreting the policy's exclusion of damage "consisting of" or "caused by ... dry rot" as unambiguously excluding coverage for damage caused by Poria. We do not agree. Both parties' experts conceded that the damage caused by Poria is commonly referred to as "dry rot." There is no indication in the policy that the parties intended a specialized

meaning to apply, particularly since "dry rot" is one of a short list of other excluded conditions with common lay meanings (e.g., "rust," "mold," etc.). Therefore, the district court did not err in interpreting the term. *See AIU Ins. Co. v. Sup.Ct.*, 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (Cal.1990) (holding that policy terms must be construed in their " 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.' " (quoting Cal. Civ.Code § 1644)); *see also Foster–Gardner, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 18 Cal.4th 857, 868, 77 Cal.Rptr.2d 107, 959 P.2d 265 (Cal.1998) (holding that the fact that a term is not defined in a policy does not by itself make it ambiguous).[1]

Even if the "dry rot" exclusion generally applies to exclude damage caused by Poria, the Glavianos argue that the trial court erred in refusing to determine whether the "dry rot" exclusion was limited by the policy's exception to its "collapse" exclusion. We agree. The district court relied upon the rule of insurance policy construction that if one exclusion in a policy excludes a loss, coverage cannot be created through an exception to another of the policy's exclusions. *See Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 10 Cal.App.4th 533, 540, 12 Cal.Rptr.2d 629 (Cal.Ct.App.1992), and *St. Paul Fire & Marine Ins. Co. v. Coss*, 80 Cal.App.3d 888, 896, 145 Cal.Rptr. 836 (Cal.Ct.App. 1978). This rule concerned third party claims under comprehensive general liability ("CGL") policies where the peril causing the loss was not covered by the scope of the policies' initial insuring clauses. In

---

1. Nonetheless, we agree with the Glavianos that the policy's "water" and "soil conditions" exclusions do not apply to damage caused by Poria. It is undisputed that Poria is fungus, not a liquid or a gas that "flows, seeps, or leaks ...." Moreover, Poria is not a "soil condition," but a plant-like organism that may live in soil. *See* Merriam–Webster Collegiate Dictionary (2001) (defining "fungus" as "organisms usually classified as plants that lack chlorophyll ... ").

contrast, because the Glavianos' policy with Allstate is an all-risk policy, the losses at issue here are presumptively covered by the insuring clause. *See Nat'l Union Fire Ins. Co. v. Lynette C.*, 228 Cal.App.3d 1073, 1081, 279 Cal.Rptr. 394 (Cal.Ct.App.1991). California cases specifically interpreting "collapse" exclusions have read exceptions to these exclusions broadly to limit the scope of otherwise applicable exclusions and allow coverage. *See Stamm Theatres, Inc. v. Hartford Cas. Ins. Co.*, 93 Cal. App.4th 531, 541, 113 Cal.Rptr.2d 300 (Cal. Ct.App.2001), *review denied,* Jan. 23, 2002; *cf. Doheny West Homeowners' Ass'n v. American Guarantee & Liab. Ins. Co.*, 60 Cal.App.4th 400, 402, 406, 70 Cal.Rptr.2d 260 (Cal.Ct.App.1997).[2]

■ We therefore interpret this policy by reading the "collapse" exclusion and its exceptions together with the "dry rot" exclusion within the context of the policy as a whole. *See Stamm Theaters, Inc.*, 93 Cal. App.4th at 538–39, 113 Cal.Rptr.2d 300. The "dry rot" exclusion generally excludes coverage of damage caused by Poria, while the exception to the "collapse" exclusion provides coverage for certain collapses caused by "hidden decay." Dry rot is a form of decay. *See id.* at 539–40, 113 Cal.Rptr.2d 300. A natural reading of the "collapse" exception for "decay" in the context of the entire policy is that it provides coverage for *collapses* caused by dry rot, even if non-collapse damage caused by dry rot is excluded. At minimum, the "dry rot" exclusion and "collapse" exception together create an ambiguity that should be

construed in favor of the insured to provide coverage. *See Nat'l Union*, 228 Cal. App.3d at 1081, 279 Cal.Rptr. 394.

## II.

■ Because the district court did not directly interpret the policy's "collapse" exception, it did not reach Allstate's arguments that summary judgment is appropriate because the Glavianos' loss was not a "sudden and accidental" "entire collapse of a part of a covered building structure" "caused by ... hidden decay." On appeal, Allstate repeats these arguments as alternate bases for affirming the district court's dismissal of the Glavianos' claims. Because the Glavianos are asserting first-party claims on an "all-risk" policy, Allstate bears the burden of proving that their loss is not covered by the exception to the collapse exclusion. *Strubble,* 35 Cal. App.3d at 504–05, 110 Cal.Rptr. 828.

Allstate first argues that, as a matter of law, the Glavianos' loss was not a "collapse" under the terms of the policy, but rather that the Poria damage was mere "settling and deterioration." There is evidence in the record, however, that at least a part of the Glavianos' floor may have "collapsed," under either a narrow or a broad definition of the term. *See Doheny West Homeowners' Ass'n,* 60 Cal.App.4th at 404, 70 Cal.Rptr.2d 260 (collapse coverage in a property insurance policy covers not only the actual collapse—the "falling down" or "caving in"—of all or a part of a structure, but also its imminent collapse). Luis De La Cruz, a wood expert for the

**2.** Allstate argues that the district court alternatively may have relied upon the principle of insurance policy construction that "a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision even though the latter, standing alone, would be broad enough to include the subject to which the more specific provision relates." Allstate's argument is un-

convincing. First, it is by no means evident from the district court's findings that it relied on this principle. Even if it had, this principle has little application to this case as it is unclear which of the policy provisions should be considered the more specific. Arguably, the "collapse" exception is more specific than the dry rot exclusion, and should govern here.

Glavianos, testified that when he arrived to inspect their premises in April 1998, portions of the sub-floor and hardwood floor between the floor joists had "fallen to the ground." Walter McCurly, the claims adjuster, agreed that when he inspected the property on May 13, 1998, the wood floor system had "collapsed." Therefore, dismissal of the Glavianos' claims cannot be sustained on the grounds that there is *no* evidence of a "collapse." *See Panico v. Truck Ins. Exch.*, 90 Cal.App.4th 1294, 1300, 109 Cal.Rptr.2d 638 (Cal.Ct.App. 2001) (reversing grant of insurer's motion for nonsuit because a covered "collapse" of a part of a building could have occurred where four to six ceiling tiles fell in its storeroom, leaving a hole in the ceiling).

Allstate also argues that as a matter of law the Glavianos' loss was not "sudden and accidental." In the context of general pollution exclusions in CGL policies, California courts have held that "sudden and accidental" events must be "unforeseen" and "having a comparatively quick onset." *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 754, 15 Cal.Rptr.2d 815 (Cal.Ct.App.1993). While *Shell* held that the commencement of the discharge of pollutants in a "sudden and accidental" discharge must be "abrupt or immediate," it also held that the discharge itself need not "terminate quickly or have only a brief duration." *Shell Oil Co.*, 12 Cal.App.4th at 756, 15 Cal.Rptr.2d 815. If these principles are applied to "collapses" caused by "hidden decay," the "collapse" itself must have a quick or abrupt onset, even if it then continued for some amount of time. There is some evidence in the record that the collapse of the Glavianos' floor, or at least a portion of it, may have been sudden. *See* De La Cruz deposition ("Apparently they stepped at one time on one section and it came down to the sub-floor. And the hardwood floor contained the fall of the person but the sub-floor had col-lapsed"); *see also* De La Cruz deposition testimony, April 30, 2000 letter concerning the rapidity of Poria wood decay.

Allstate argues that even if there is a genuine issue of material fact as to whether the Glavianos' loss was a sudden collapse, there is no evidence in the record that any collapse was caused by "hidden decay." Allstate argues that it is undisputed that warping of the interior floorboards was visible to the Glavianos and their tenant since 1996. Nonetheless, there is also evidence that on February 22, 1997 (slightly more than one year before the present claims were made), Allstate conducted an inspection of the Glavianos' residence before issuing them the present policy. Allstate's inspection form generally indicated that the property had no damage, dry rot, crumbling, collapsing, major cracking or leaning. Construing the evidence in light most favorable to the Glavianos, there is a genuine issue of material fact as to whether there was hidden decay of the portion of the wood that caused the alleged collapse, as well as the extent of any such hidden decay (i.e., was the rotting of all of the hardwood floor, the subfloor and the joists hidden?).

### III.

■ Finally, the Glavianos argue that the district court erred in dismissing their claim for breach the covenant of good faith and fair dealing for Allstate's "bad faith" denial of coverage. Where there is a genuine issue as to the insurer's liability under the policy, "bad faith" liability cannot be imposed. *See Dalrymple v. U.S.A.S.*, 40 Cal.App.4th 497, 519, 46 Cal.Rptr.2d 845 (Cal.Ct.App.1995). Allstate could have reasonably denied coverage for failure of the Poria damage to constitute a "sudden" "collapse" caused by "hidden decay." Therefore, there is insufficient evidence to

create a genuine issue of material fact that Allstate acted unreasonably in denying the claim.

AFFIRMED in part, REVERSED in part, and REMANDED.

No costs.