[No. B082609. Second Dist., Div. Five. May 24, 1996.]

GEORGE W. BIXLER, Plaintiff and Appellant, v.
DEREK GOULDING et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Part III.D. of this opinion is not certified for publication. (See Cal. Rules of Court, rules 976(b) and 976.1.)

**COUNSEL**

John G. Kerr, Kirtland & Hager and Ronald B. Hager for Plaintiff and Appellant.

Acker, Kowalick & Whipple and Stephen Acker for Defendants and Respondents.

**OPINION**

**TURNER, P. J.—**

### I. INTRODUCTION

Plaintiff, George W. Bixler, M.D., appeals from a summary judgment in his malicious prosecution action granted in favor of defendants, Derek Goulding and his law firm, Acker, Kowalick & Whipple. Lisa Langere had filed an unsuccessful medical malpractice action against Dr. Bixler and Glendale Family Services Association. In Ms. Langere's lawsuit, Glendale Family Services Association brought a cross-complaint for equitable relief and indemnity against Dr. Bixler. After the conclusion of Ms. Langere's medical malpractice action, Dr. Bixler sued Glendale Family Services Association and its counsel for malicious prosecution. We affirm the summary judgment entered in the malicious prosecution suit in favor of Mr. Goulding and his law firm.

### II. FACTS AND PROCEDURAL BACKGROUND

#### A. *Prior Medical Malpractice Action and Cross-complaint for Indemnity*

On March 31, 1987, the San Fernando Crisis Management Center, a Los Angeles County facility involuntarily transferred Ms. Langere to the Edgemont Hospital. She was involuntarily admitted under Welfare and

Institutions Code section 5150 because she was suicidal. John Viesselman, M.D., a psychiatrist, and Barry Solof, M.D., an internist, treated Ms. Langere at Edgemont Hospital. Dr. Viesselman first prescribed the drug Xanax for Ms. Langere.

On August 23, 1988, 16 months after Ms. Langere was discharged from Edgemont Hospital, City of Los Angeles paramedics transported her to Glendale Adventist Medical Center where she was voluntarily admitted by Helena Gerundo, M.D., an internist, for an apparent overdose of Xanax. She was later evaluated by Dr. Bixler, a staff psychiatrist, who placed her on an involuntary 72-hour hold under Welfare and Institutions Code section 5150 because she was suicidal. On August 26, 1988, she was discharged and Dr. Bixler treated her as an outpatient.

On September 6, 1988, Ms. Langere went to the Glendale Family Services Association, a mental health counseling center and agency of the United Way, and was interviewed by intake coordinator, Preston C. Oppenheimer, Ph.D., a psychologist. Ms. Langere appeared depressed and gave a history of suicide attempts. After Dr. Oppenheimer spoke with Dr. Bixler, he called the Glendale Police Department and had Ms. Langere involuntarily transported to Olive View Medical Center. She was again involuntarily admitted under Welfare and Institutions Code section 5150.[1]

On January 29, 1990, Ms. Langere, represented in pertinent part by Robert F. Brennan, filed a complaint, which was later amended, for medical malpractice for negligence in causing Ms. Langere "to be detained against her will and transported to Olive View Medical Center . . . where she was abused, forcibly drugged without her consent and further detained against her will." The underlying action named numerous defendants including Dr. Bixler and Glendale Family Services Association. Ms. Langere alleged in her first amended complaint that Dr. Bixler: negligently renewed her Xanax prescriptions when she was addicted to the drug; failed to investigate her prior medical conditions causing her emotional difficulties; failed to warn her of Xanax's side effects; and told Glendale Family Services Association's employees to involuntarily detain Ms. Langere. Dr. Bixler was represented in his defense by John G. Kerr and his law firm, Kirtland, Hager & Cockrell. Glendale Family Services Association was represented in their defense by Mr. Goulding and his law firm.

On August 1, 1990, Glendale Family Services Association, represented by Mr. Goulding and his law firm, filed a cross-complaint seeking equitable

---

[1] All of these facts were communicated to Mr. Goulding by Dr. Oppenheimer before the aforementioned cross-complaint was filed.

relief and indemnification based on comparative fault against Dr. Bixler, Ms. Langere, and others. It is this cross-complaint filed by Mr. Goulding which is the basis of Dr. Bixler's malicious prosecution claims in the present lawsuit. All defendants and cross-defendants in the prior medical malpractice action discussed the possibility of dismissing all cross-complaints without prejudice to show a unified defense. On December 27, 1990, Mr. Goulding specifically offered to dismiss the Glendale Family Services Association cross-complaint against Dr. Bixler in exchange for waiver of costs. Dr. Bixler rejected this offer.

Glendale Family Services Association's motion for summary judgment on Ms. Langere's prior malpractice action was heard and granted on July 19, 1991. On August 9, 1991, Mr. Goulding lodged a proposed request for dismissal without prejudice of the Glendale Family Service Association cross-complaint. On August 15, 1991, Dr. Bixler's motion for summary judgment on Ms. Langere's prior malpractice action and Glendale Family Services Association's cross-complaint for indemnity was heard and granted. On October 7, 1991, a summary judgment was entered in favor of Dr. Bixler against Ms. Langere, Glendale Family Services Association, and other parties. Later, the court denied Dr. Bixler's motion to tax costs against the other codefendants, including Glendale Family Services Association.

### B.  *Malicious Prosecution Action*

On or about July 28, 1992, Dr. Bixler filed his complaint for malicious prosecution against various parties involved in the prior medical malpractice action, including: Glendale Family Services Association; its attorneys, consisting of Mr. Goulding and his law firm; and Ms. Langere and her attorney Mr. Brennan. On October 9, 1992, Mr. Goulding and his law firm answered. On August 24, 1993, the court granted Mr. Brennan's motion for summary judgment against Dr. Bixler. The court concluded Mr. Brennan pursued the prior malpractice action with probable cause as to Dr. Bixler. Further, the trial court found Mr. Brennan did not act with malice towards Dr. Bixler. The trial court awarded Mr. Brennan costs against Dr. Bixler in the amount of $1,047.32.

On or about May 18, 1993, Mr. Goulding and his firm filed a motion for summary judgment, arguing: probable cause supported the filing of the Glendale Family Services Association cross-complaint against Dr. Bixler in the prior action; Dr. Bixler did not incur additional damages as a result of the cross-complaint; Dr. Bixler did not obtain a favorable termination with respect to the Glendale Family Services Association cross-complaint; and Mr. Goulding and his law firm did not file the Glendale Family Services

Association cross-complaint in the prior action with malice. In support of the motion for summary judgment, Mr. Goulding and his law firm filed: his declaration; exhibits; a separate statement of undisputed facts; a request for judicial notice of the pleadings and papers on file in Ms. Langere's prior medical malpractice action; and a notice of lodging certain documents.

Mr. Goulding and his law firm's separate statement of undisputed facts, in pertinent part, showed: on September 6, 1988, Ms. Langere complained to Dr. Oppenheimer at the Glendale Family Services Association that she was suicidal; Dr. Oppenheimer and the Glendale Police Department conferred with Dr. Bixler by telephone; both Dr. Oppenheimer and a Glendale Police Department employee understood Dr. Bixler to have communicated to them Ms. Langere's suicidal statements should be taken seriously and she should be involuntarily committed; Dr. Oppenheimer stated Dr. Bixler indicated it was "advisable to involuntarily hospitalize her"; Ms. Langere's medical malpractice complaint alleged negligence with respect to her September 6, 1988, involuntary commitment; Mr. Goulding and his law firm represented Glendale Family Services Association in Ms. Langere's malpractice suit; and Mr. Goulding determined a cross-complaint should be filed against Dr. Bixler. The separate statement of undisputed facts also showed in deciding to file a cross-complaint against Dr. Bixler, Mr. Goulding considered: Dr. Oppenheimer's April 2, 1990, letter relating the circumstances concerning Ms. Langere's September 6, 1988, involuntary commitment; Glendale Family Services Association's answer to Ms. Langere's malpractice action; the fact that Ms. Langere's malpractice action was viewed as a case of "possible liability" by Mr. Goulding, Glendale Family Services Association, and its insurer; the fact Ms. Langere added Dr. Bixler as a defendant in her medical malpractice action; equitable indemnity principles; a telephone call to Ms. Langere's attorney, Mr. Brennan; in that telephone conversation, Mr. Brennan, Ms. Langere's attorney, explained why Dr. Bixler had been sued; according to Mr. Brennan, experienced medical professionals had reviewed Dr. Bixler's treatment of Ms. Langere; and, according to Mr. Brennan, those professionals concluded Dr. Bixler acted improperly in failing to reduce Ms. Langere's intake of Xanax just prior to September 6, 1988, when she was involuntarily committed. Further, Mr. Goulding stated he had no ill will or improper purpose in bringing the cross-complaint and simply thought the claims for equitable indemnity and other relief were appropriate because: Dr. Bixler had recommended, or had given Dr. Oppenheimer the impression, that Ms. Langere should be involuntarily committed; there were questions concerning Dr. Bixler's treatment of Ms. Langere, specifically of not weaning her off of Xanax and her other involuntary commitment when he was her psychiatrist; on December 26, 1990, Mr. Goulding received and reviewed Dr. Bixler's answers to Glendale Family Services Association's interrogatories in Ms. Langere's malpractice case; the interrogatory answers indicated

Dr. Bixler admitted he advised Glendale Family Services Association and Dr. Oppenheimer Ms. Langere had previously attempted suicide and her threats should be taken seriously; the fact that during the malpractice action all defendants and cross-defendants discussed dismissing cross-complaints without prejudice to present a unified defense; the fact that Glendale Family Services Association's motion for summary judgment was granted in Ms. Langere's malpractice action on July 19, 1991; Dr. Bixler's motion for summary judgment was granted on August 15, 1991; and, on October 7, 1991, the court ruled that Dr. Bixler was not entitled to recover costs against various other codefendants in the prior medical malpractice action.

On June 2, 1993, Dr. Bixler filed an opposition arguing: the cross-complaint was initiated without probable cause because Mr. Goulding failed to obtain a review of the merits of Ms. Langere's complaint against Glendale Family Services Association and of their cross-complaint against Dr. Bixler by a qualified medical professional; Dr. Bixler incurred economic damages as well as mental and emotional distress damages as a result of the cross-complaint; the summary judgment in the prior action was in Dr. Bixler's favor and constituted a favorable termination of the cross-complaint as a matter of law; and the question of malice must be reserved for the jury. Specifically, Dr. Bixler argued as to probable cause that since Mr. Goulding believed his own client, Dr. Oppenheimer, was not negligent; then Dr. Bixler could not have been negligent in detaining Ms. Langere. Mr. Goulding should not have believed Mr. Brennan about the existence of a properly qualified medical professional who could testify that Dr. Bixler was negligent. He further argued Mr. Goulding was deficient in failing to review Dr. Bixler's office records and to obtain a review by a knowledgeable professional in the field. Nothing in Dr. Bixler's summary judgment opposition or response to the moving parties' separate statement disputed the following: Mr. Goulding had been advised by Dr. Oppenheimer concerning the circumstances of the commitment of Ms. Langere; Dr. Oppenheimer had spoken with a Glendale Police Department employee and Dr. Bixler when Ms. Langere appeared on September 6, 1988, prior to the involuntary commitment and reported she was suicidal; Dr. Bixler stated in that telephone conversation Ms. Langere's threats should be taken seriously; Dr. Oppenheimer had stated Dr. Bixler indicated it was "advisable to involuntarily hospitalize her"; and Mr. Goulding had spoken with Mr. Brennan and had been advised about possible negligence by Dr. Bixler.

The summary judgment motion filed by Mr. Goulding and his law firm was heard and granted on June 16, 1993. The court found there was no triable issue as to whether probable cause existed for the filing of the

Glendale Family Services Association cross-complaint and Dr. Bixler did not receive a favorable termination of the underlying suit for purposes of bringing a malicious prosecution action. Judgment in favor of Mr. Goulding and his law firm were entered on December 28, 1993.

## III. DISCUSSION

### A. *Standard of Review*

The present summary judgment motion was filed and ruled upon in 1993. As such it was subject to the provisions of former Code of Civil Procedure section 437c, subdivision (n)(2) which provided in connection with summary judgment motions by defendants in 1993: "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established . . . . Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action." (Stats. 1992, ch. 1348, § 1²; cf. *Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 742, 747-748 [41 Cal.Rptr.2d 719]; *Jambazian* v. *Borden* (1994) 25 Cal.App.4th 836, 843-844, 846, 850 [30 Cal.Rptr.2d 768].) ■ We review orders granting or denying summary judgment motion de novo. (*FSR Brokerage, Inc.* v. *Superior Court* (1995) 35 Cal.App.4th 69, 72 [41 Cal.Rptr.2d 404]; *Union Bank* v. *Superior Court, supra,* 31 Cal.App.4th at p. 579.)

### B. *Malicious Prosecution*

■ Our Supreme Court has held the following constitute the elements of a malicious prosecution claim: " 'To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' (*Bertero* [v. *National General Corp.* (1974)] 13 Cal.3d [43,] 50. . . .)' " (*Crowley* v. *Katleman* (1994) 8 Cal.4th 666, 676 [34 Cal.Rptr.2d 386, 881 P.2d 1083]; *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498].) ■ Malicious prosecution of a cross-complaint is actionable because a

²Code of Civil Procedure section 437c was later amended effective January 1, 1994. (Stats. 1993, ch. 276, § 1; see *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 581-583 [37 Cal.Rptr.2d 653].)

cross-complaint is a distinct and separate cause of action brought by a defendant to offensively prosecute a cause of action. (*Coleman* v. *Gulf Ins. Group* (1986) 41 Cal.3d 782, 793 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083]; *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50-51 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) ▮ A malicious prosecution cause of action is " 'carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court . . . .' " (*Rubin* v. *Green* (1993) 4 Cal.4th 1187, 1194 [17 Cal.Rptr.2d 828, 847 P.2d 1044]; accord, *Sheldon Appel Co.* v. *Albert & Oliker*, *supra*, 47 Cal.3d at p. 872.)

### C. *Probable cause*

In this case we deal with the element of a malicious prosecution claim which requires that the plaintiff at trial prove that the underlying action was prosecuted without probable cause. Even in the context of a trial, this is a question of law if the facts are undisputed. (*Sheldon Appel Co.* v. *Albert & Oliker*, *supra*, 47 Cal.3d at pp. 874-876.) Because this case arises in the context of the review of an order granting summary judgment, the initial burden rested with Mr. Goulding and his law firm as the moving parties to show that the underlying cross-complaint was filed with probable cause. Once they showed that the cross-complaint was instituted with probable cause, the burden shifted to plaintiff, Dr. Bixler, to show the existence of a triable issue. (Former Code Civ. Proc., § 437c, subd. (n)(2); Stats. 1992, ch. 1348, § 1; *Villa* v. *McFerren*, *supra*, 35 Cal.App.4th at pp. 747-748; *Jambazian* v. *Borden*, *supra*, 25 Cal.App.4th at pp. 843-844, 846, 850.) ▮ In *Sheldon Appel Co.*, our Supreme Court adopted the following definition of the element of probable cause in the malicious prosecution context: "Whereas the malice element is directly concerned with the subjective mental state of the defendant in instituting the prior action, the probable cause element calls on the trial court to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable. The resolution of that question of law calls for the application of an objective standard to the facts on which the defendant acted. [Citation.] Because the malicious prosecution tort is intended to protect an individual's interest 'in freedom from unjustifiable and unreasonable litigation' [citation], if the trial court determines that the prior action was objectively reasonable, the plaintiff has failed to meet the threshold requirement of demonstrating an absence of probable cause and the

defendant is entitled to prevail." (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 878, italics omitted.) Later, our Supreme Court referred to the probable cause element as follows: "Accordingly, when, as in this case, the facts known by the attorney are not in dispute, the probable cause issue is properly determined by the trial court under an objective standard; it does not include a determination whether the attorney subjectively believed that the prior claim was legally tenable. [Citations.]" (*Id.* at p. 881.) The *Sheldon Appel Co.* requirement that the probable cause element be defined in terms of whether the underlying suit was "objectively tenable" (*id.* at p. 882) or "any reasonable attorney would have thought the claim tenable" (*id.* at p. 886) has been applied in various Court of Appeal opinions to uphold or direct the dismissal of malicious prosecution cases. (*Dalrymple* v. *United Services Auto. Assn.* (1995) 40 Cal.App.4th 497, 519-523 [46 Cal.Rptr.2d 845]; *Knight* v. *City of Capitola* (1992) 4 Cal.App.4th 918, 932 [6 Cal.Rptr.2d 874]; *Cantu* v. *Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 883-884 [6 Cal.Rptr.2d 151]; *Ramsey* v. *City of Lake Elsinore* (1990) 220 Cal.App.3d 1530, 1540-1541 [270 Cal.Rptr. 198]; *Klein* v. *Oakland Raiders, Ltd.* (1989) 211 Cal.App.3d 67, 74-76 [259 Cal.Rptr. 149].)

◼ In the present case, the evidence referred to in the moving parties' separate statement of undisputed facts relied upon by Mr. Goulding in deciding to file the indemnity cross-complaint was sufficient to shift the burden of proof pursuant to former Code of Civil Procedure section 437c, subdivision (n)(2) to plaintiff. That evidence indicated Mr. Goulding relied upon the following factors in filing the cross-complaint: on September 6, 1988, Ms. Langere complained to Dr. Oppenheimer at Glendale Family Services Association that she was suicidal; Dr. Bixler conferred with both Dr. Oppenheimer and a Glendale Police Department employee; Dr. Bixler indicated that Ms. Langere's suicidal statements should be taken seriously; and Dr. Bixler further indicated that Ms. Langere should be involuntarily committed. Ms. Langere's underlying medical negligence suit alleged the malpractice related to the September 6, 1988, involuntary commitment. It bears emphasis Dr. Oppenheimer stated in writing to Mr. Goulding that Dr. Bixler recommended Ms. Langere be committed. *These facts which clearly involved Dr. Bixler in the decision to have Ms. Langere involuntarily detained were related to Mr. Goulding by his client.* Moreover, Ms. Langere's suit was one viewed by Glendale Family Services Association and its insurer as one involving possible liability. Also, Mr. Brennan, Ms. Langere's counsel indicated he had information from properly qualified medical professionals that Dr. Bixler had improperly failed to reduce her dosage of Xanax. Taken together, these facts showed that the cross-complaint filed on behalf of Glendale Family Services Association by Mr. Goulding and his law firm

was "objectively tenable." (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 882.) A reasonable attorney having been apprised of the foregoing facts by a medical care provider under the circumstances of this case would have "thought the [indemnity] claim tenable" which is the test articulated in *Sheldon Appel Co.* (*Id.* at p. 886.) These facts constitute a classic medical malpractice scenario involving potential joint tortfeasors where it would have been objectively reasonable to pursue an indemnity cross-complaint.

■ Given these facts, the summary judgment burden of proof shifted to Dr. Bixler to show that a triable issue existed as to the probable cause question. Dr. Bixler presented no evidence concerning what would constitute "preliminary factual questions" which would be reserved for a jury or the judge at a bench trial. (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 884; *Dalrymple* v. *United Services Auto. Assn., supra,* 40 Cal.App.4th at p. 515; *Aronow* v. *LaCroix* (1990) 219 Cal.App.3d 1039, 1044 [268 Cal.Rptr. 866].) The fact that Dr. Oppenheimer was satisfied he and Dr. Bixler had not committed any professional negligence does not show an indemnity claim was not objectively tenable. When the cross-complaint was filed, Mr. Goulding confronted a complaint by Ms. Langere which alleged negligence on the part of Glendale Family Services Association premised on purported negligent conduct by Dr. Oppenheimer. Mr. Goulding had been informed Dr. Bixler was inextricably involved in the purportedly negligent recommendation to detain Ms. Langere. Further, Mr. Goulding was informed by Mr. Brennan, Ms. Langere's counsel, there was a competent medical professional that would testify Dr. Bixler had been negligent. Regardless of Dr. Oppenheimer's belief he had done nothing wrong, it was objectively tenable for Mr. Goulding to conclude if the trier of fact in Ms. Langere's lawsuit determined Glendale Family Services Association acted improperly, there was negligence on Dr. Bixler's part which warranted the filing of an indemnity cross-complaint. In other words, it was undisputed Mr. Goulding relied on certain facts, many of which were related to him by this client. Hence, based upon the undisputed facts, the trial court correctly resolved the probable cause issue, a purely legal question, and granted the summary judgment motion in favor of Mr. Goulding and his law firm.

D.*

. . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1179.

## IV.   DISPOSITION

The summary judgment is affirmed. The sanctions order is reversed. Defendants, Derek Goulding and Acker, Kowalick & Whipple, shall recover their costs on appeal from plaintiff, George Bixler.

Armstrong, J., and Godoy Perez, J., concurred.