[No. E025557. Fourth Dist., Div. Two. Mar. 17, 2000.]

GOVERNMENT EMPLOYEES INSURANCE COMPANY et al.,
Petitioners, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
JAMESZETTA R. SIMS, Real Party in Interest.

COUNSEL

Ropers, Majeski, Kohn & Bentley, Stephen M. Hayes and Robert P. Andris for Petitioners.

Horitz & Levy, Mitchell C. Tilner and Mary F. Dant for 20th Century Insurance Company as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Bruggeman, Smith & Peckham and Steven K. Beckett for Real Party in Interest.

OPINION

GAUT, J.—Real party in interest Jameszetta R. Sims[1] held a policy of automobile insurance issued by petitioner Government Employees Insurance Company (GEICO). It included collision coverage for her car. After she was involved in a traffic accident and suffered serious and disabling injuries, GEICO paid her husband, Demar Sims, the agreed value of the car. Unfortunately, Jameszetta and Demar were estranged and separated, and he was no longer an insured on her policy; she alleges that, as part of their informal separation agreement, the car was to be hers. However, he was still a *registered* owner of the vehicle. Demar never paid Jameszetta any of the insurance proceeds.

The policy contained a provision which authorized GEICO to "settle claims for *loss* either with the *insured* or the owner of the property." (Original italics.) Is GEICO off the hook? We hold that it is, and accordingly will direct the trial court to grant GEICO's petition for summary judgment.

*Facts and Procedural Background*

Most of the significant facts are not in dispute; to the extent that they are, we present the facts in the light most favorable to Jameszetta.

Jameszetta was the sole named insured on the policy. Although she and Demar had previously both been named as insureds, she had notified GEICO

---

[1]We will refer to Jameszetta Sims and her husband Demar Sims as "Jameszetta" and "Demar" to avoid confusion, and not out of any lack of respect. In the circumstances, the alternative designations of "Husband" and "Wife" seem inappropriate. (See *Lakkees v. Superior Court* (1990) 222 Cal.App.3d 531, 534, fn. 1 [271 Cal.Rptr. 845].)

that his name was to be removed prior to the accident, and GEICO had complied. According to Jameszetta, at the time of their separation, she and Demar agreed that the vehicle should be hers[2] and title would be cleared up in dissolution proceedings. After the accident, and while she was hospitalized, GEICO corresponded with Demar, although his address was different from Jameszetta's. The Department of Motor Vehicles certificate showed that the vehicle was registered in the names of "Demar or Jameszetta Sims." Eventually GEICO issued a check to Demar as compensation for the loss, but Demar did not pass on any of the funds to Jameszetta. GEICO rejected Jameszetta's demands that it issue a new check to her. She thereafter sued GEICO for breach of contract, bad faith, and related torts.

GEICO moved for summary judgment on the basis of the Department of Motor Vehicles records and the policy language itself, asserting that it had properly issued the check to Demar as an owner of the subject vehicle. Pointing to the alternatives given to it by the subject policy provision, GEICO argued below (and argues here) that Demar Sims was entitled to the payment and his failure to pass any of the funds on to Jameszetta was between the two of them, and not something which concerned GEICO.

As a matter of legal arguments, Jameszetta contended that Demar was not really an "owner" because he did not have "all the incidents of ownership," although he did have legal title. (Veh. Code, § 460.) Due to their alleged agreement, which arguably resulted in an equitable transfer of interests, Demar arguably no longer had the right to possess the vehicle. (See Civ. Code, § 654, which defines "ownership" as "the right of one or more persons to possess and use [a thing] to the exclusion of others.") In Jameszetta's view, the policy provision quoted above was designed *solely* to authorize and permit GEICO to make payment to a true third party "owner" in situations in which the insured had no actual claim to the proceeds. For example, if an insured had been involved in an accident while driving a friend's car,[3] GEICO could choose to make payment directly to the owner. ▮▮ ▮▮ Jameszetta's construction of the policy provision was supported by comments in a GEICO claims' processing manual, which confirmed that in the example discussed above, GEICO could choose to whom it would make payment.[4]

---

[2]Demar was to keep a second vehicle for himself.

[3]The policy includes coverage for damage to nonowned vehicles which are being driven by the insured with the permission of the owner.

[4]In her response, Jameszetta also complained that GEICO had breached its obligation to pay her the $250 under the policy's "collision deductible waiver" and that it arbitrarily fixed the value of the destroyed vehicle without consulting her. As GEICO objected, these claims were not raised in her complaint. A defendant moving for summary judgment need address

Jameszetta also argued that the policy was ambiguous because it did not define "owner" and GEICO's construction defeated her reasonable expectations.

The trial court denied the motion. GEICO then sought reconsideration (Code Civ. Proc., § 1008), at which time GEICO for the first time directed the court's attention to Vehicle Code sections 5600.5, subdivision (a) and 4150.5, subdivision (a). These statutes, which are substantially similar, provide that a vehicle which is registered in the names of "A or B" is deemed to be held in joint tenancy and either A or B has the "absolute right to dispose of the title and interest." GEICO argued that Demar Sims therefore had the apparent right to execute the usual transfer of title of the destroyed vehicle in favor of GEICO, and was entitled to payment for the loss. This argument too was unsuccessful and this petition followed.[5]

---

only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers. (*Mars v. Wedbush Morgan Securities, Inc.* (1991) 231 Cal.App.3d 1608, 1613-1614 [283 Cal.Rptr. 238].) Jameszetta argues strenuously that the allegations of her complaint *do* cover these claims, specifically that she alleged that "[a] (t no time have defendants, or any of them, negotiated the amount of property damage proceeds due and payable to plaintiff." We are not persuaded. Nothing in the complaint suggests or gives notice that Jameszetta was dissatisfied with the value placed on the vehicle by GEICO, or that such value was improperly determined; nothing in the complaint indicates that plaintiff was concerned about a breach of GEICO's obligation under the "collision deductible waiver." The clear, sole thrust of the pleading is that GEICO paid Demar instead of Jameszetta.

We note that Jameszetta did not seek leave to amend her complaint to expand her claims, although she might properly have done so. (See *Soderberg v. McKinney* (1996) 44 Cal.App.4th 1760, 1773 [52 Cal.Rptr.2d 635].) Accordingly, we do not discuss these issues further, and if the trial court relied upon them for its ruling, it erred in doing so.

Jameszetta also attempts to present evidence which was not before the trial court, specifically the deposition testimony of Demar Sims and two GEICO employees, Dune Pagaduan and Esmeralda Trevino. She explains that the transcripts of their depositions were not prepared in time for inclusion in her opposition to the motion below.

In her opposition to the motion, Jameszetta did not request a continuance for the purpose of providing additional evidence, although the statute clearly authorizes such a request. (Code Civ. Proc., § 437c, subd. (h).) Although the trial court's ruling eventually made any such request unnecessary, this was not known at the beginning of the hearing, yet Jameszetta said nothing about the need to supplement her opposition. Nor did she provide this evidence after GEICO filed its motion for reconsideration. It is not properly before us.

In any event, to forestall objections, we have reviewed this material. It tends to show no more than that GEICO was aware that Demar and Jameszetta had separated and that it may have mistakenly assumed, at least at some point, that he was still an insured under the policy. This is insufficient to change our analysis.

[5]In her preliminary opposition, Jameszetta argued that GEICO had not shown any need for extraordinary relief. Our issuance of the order to show cause operates as a conclusive finding that the remedy by way of appeal would not be adequate. (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].)

Jameszetta also attacks the propriety of GEICO's motion for reconsideration. As GEICO's petition was filed with this court within the time period specified in Code of Civil

## DISCUSSION

The rules governing a motion for summary judgment are well known and we need not set them out in detail. ██ A defendant seeking summary judgment must either prove an affirmative defense, disprove at least one element of the plaintiff's cause of action, or show that some such element cannot be established. (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465 [55 Cal.Rptr.2d 415].) The opposing party need not prove his or her case; it is enough to show that a triable issue of material fact exists. (*McManis v. San Diego Postal Credit Union* (1998) 61 Cal.App.4th 547, 554 [71 Cal.Rptr.2d 617].) The evidence and affidavits of the moving party are construed strictly, while those of the opponent are liberally read. (*Kulesa v. Castleberry* (1996) 47 Cal.App.4th 103, 112 [54 Cal.Rptr.2d 669].) Our review of the trial court's decision is de novo. (*Bixler v. Goulding* (1996) 45 Cal.App.4th 1179, 1187 [53 Cal.Rptr.2d 246].)

██ Jameszetta's position is, in essence, that the policy provision is ambiguous, and that GEICO had no right to pay Demar when it had reason to suspect that he had no "real" ownership interest in the vehicle. Although these arguments are presented in a number of ways, we reject all of them.

Jameszetta points out that GEICO knew that she had asked that Demar's name be removed from the policy so that he was no longer an "insured." She also suggests that GEICO should have realized that Demar was no longer an interested party with respect to the vehicle because he no longer shared her address. Neither of these factors negates Demar's status as an owner, as reflected on the Department of Motor Vehicles records. While it may be unusual, or even irregular, for a co-owner of a vehicle not to carry insurance on it, GEICO was not obliged to look into the wisdom of such an arrangement. (See generally *Fitzpatrick v. Hayes* (1997) 57 Cal.App.4th 916, 927 [67 Cal.Rptr.2d 445], on the insurer's lack of duty to advise the insured.) Nor was GEICO under any obligation to investigate possible domestic discord in Jameszetta's family, let alone to inquire into the spouses' intentions concerning ownership of the vehicle. The problem was caused by Jameszetta's failure to secure an official transfer of title into her sole name, not any dereliction of duty on GEICO's part.

Jameszetta then argues that Demar was simply not an owner because he did not have the incidents of ownership other than legal title. (See Veh. Code, § 460.) We agree that, for certain purposes, a person may be considered the "owner" even though he does not have legal title. In *California State*

Procedure section 437c, subdivision (*l*), we may, and do, essentially ignore the reconsideration proceedings.

*Automobile Assn. v. Foster* (1993) 14 Cal.App.4th 147, 151 [17 Cal.Rptr.2d 635], the court candidly noted that there may be multiple "owners" of a vehicle depending on the purpose of the definition. For example, although ownership generally depends on legal title, the purchaser under a conditional sales contract may also be "an" owner although the seller who holds title *also* has that status. (See also *Bohannon v. Aetna Casualty & Surety Co.* (1985) 166 Cal.App.3d 1172, 1175-1176 [212 Cal.Rptr. 848].)[6]

But these authorities do not prove Jameszetta's case because California's most basic principle of automobile ownership requires a formal transfer. As a "full-title" state, California's primary interest is in providing that anyone doing business with the purported owner of a motor vehicle may depend upon the state of the *record title. (Suburban Motors, Inc. v. State Farm Mut. Auto. Ins. Co.* (1990) 218 Cal.App.3d 1354, 1361-1363 [268 Cal.Rptr. 16].) The fact that, as between him and Jameszetta, Demar may have had no equitable right to use or possess the vehicle, is irrelevant to Demar's standing as an owner. GEICO was entitled to rely upon the documentation from the Department of Motor Vehicles.[7]

### The Policy Is Not Ambiguous

The second, related, portion of Jameszetta's argument is that the policy provision is ambiguous and should be construed in line with her interests; further, that the provision concerning payment to the owner was not conspicuous and not brought to her attention. We are familiar with the rules

---

[6]Many of the cases struggling with the concept of "owner" in the automobile context involve the vicarious tort liability of record "owners" who have actually sold or otherwise transferred the vehicles. (*E.g. Brennan v. Gordon Ball, Inc.* (1985) 163 Cal.App.3d 832 [210 Cal.Rptr. 32].) Others cited by Jameszetta are even farther afield. For example, she cites *Gates v. Levers* (1951) 108 Cal.App.2d 131 [238 P.2d 143] for the proposition that the Department of Motor Vehicles certificate is not conclusive on the question of ownership. *Gates* involved a claim of misrepresentation by a plaintiff who had purchased a trailer under a conditional sales contract. The defendant pointed out that the title certificate showed a third party rather than plaintiff, and argued that plaintiff had no standing. Plaintiff's explanation was that he had placed title in his sister's name for various reasons, and the court accepted that he nevertheless had the right to proceed in the action. *Gates* simply demonstrates that equity will recognize the true owner over the record title where circumstances so require; it does not stand for the proposition that an insurer may not rely on the state of the record title in discharging its policy obligations. *Gates* would be more helpful to Jameszetta in an action against Demar than it is here.

[7]Jameszetta also relies upon Insurance Code section 383.5, which defines "owner" as "any person who is named as an insured in the contract of insurance . . . and . . . the vendee, pledgee, or chattel mortgagor of a motor vehicle . . . ." Although this definition would exclude Demar, it does not assist Jameszetta. The definitions in the statute are expressly stated to be for the purposes of the statute only. Section 383.5 is expressly designed to ensure that insurance agreements are put in writing and delivered to the owners of the vehicle. Its definitions have no general application.

governing the interpretation of insurance policies, which generally favor the insured. (See generally *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666-667 [42 Cal.Rptr.2d 324, 913 P.2d 878].) However, although the word "owner" may be subject to varying definitions, it is not inherently ambiguous but is a word of common meaning. In fact, "[t]he word 'owner,' as applied to motor vehicles, is commonly understood to designate the person in whom title is vested either as legal owner or as registered owner." (*Martin v. State Farm Mutual Auto. Ins. Co.* (1962) 200 Cal.App.2d 459, 469 [19 Cal.Rptr. 364].) If anything, Jameszetta must have understood it as meaning "legal owner" in accordance with the full-title rule.

We are not impressed with Jameszetta's claims regarding her personal expectations. To be given effect by the courts, such expectations must be *reasonable*; it is repeatedly noted that the rules of construction go no farther than is necessary to protect "the objectively reasonable expectations of the insured." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 824 [274 Cal.Rptr. 820, 799 P.2d 1253].) In determining the question, the court does not leave its common sense at the door. (See *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].) Here, the policy provision cannot possibly be interpreted to require GEICO to pay the insured in all cases. It unequivocally and unambiguously allows GEICO to pay either the insured *or* the owner, and even Jameszetta implicitly concedes that there are at least some circumstances in which payment to the owner rather than the insured would be undeniably proper. Once again we are constrained to point out that it was Jameszetta who created any doubt in the matter by relying on an alleged transfer of interests that was never officially recorded; she thus made it possible not only for GEICO supposedly to err, but for herself to be arguably defrauded by Demar. Had she insisted that Demar record a release of his interest, or other documentation of the transfer, this case would never have arisen. As it is, she is chargeable with the knowledge that Demar remained an "owner" as a matter of law.

Jameszetta further argues that the policy expressly informs her that it is providing "*Your* Protection for *Loss* or Damage to *Your* Car." (Italics in policy.) So? The policy coverage—which includes nonowned vehicles being used with the permission of the owner—is in fact *broader* than this caption, and Jameszetta cannot complain of this. GEICO would have paid for the loss if Jameszetta had been driving a friend's car, thus protecting Jameszetta against a claim from the friend. GEICO *did* also provide the promised coverage for *Jameszetta's* own vehicle; again, the problem is that Demar was a co-owner of it, and this was not GEICO's fault.

Jameszetta proceeds to find additional ambiguities galore. We do not consider them controlling either singly or as a group. For example, she

contends that the provision that "[w]e may settle claims for *loss* either with the *insured* or the owner of the property" (italics in policy) could be construed as permitting GEICO only to "settle" in the supposed sense of "negotiate," but not to "settle" in the sense of "pay out in satisfaction of a demand." She also purports to find confusion in GEICO's use of the general term "property" in this clause rather than more specifically explaining that it refers both to vehicles and other tangible items. She also points out that the policy authorizes GEICO to make "separate payments" to the owner and the *lienholder*, presumably in the amounts of their separate interests, and suggests that the provision in question in this case could have been more carefully drafted to explain GEICO's powers. This is straining at gnats.

Perfection in drafting is not required, and probably not even possible. The provision in question is clear. If the insured was driving a vehicle owned by another and damage occurred, GEICO could pay either the insured or the owner. As a legal owner, Demar had the full right to transfer the damaged vehicle to GEICO as salvage. (Veh. Code, § 5600.5.) In effect, he had the power of a sole owner and Jameszetta cannot complain that GEICO treated him as such. Her attempted analogy to the situation in which coverage cannot be reasonably expected for a vehicle which has been specifically deleted from a policy (see *Bohannon v. Aetna Casualty & Surety Co., supra,* 166 Cal.App.3d 1172, 1176-1177) is unavailing; although Demar was deleted as an insured, he continued to be an owner.

Jameszetta also argues that the only reasonable interpretation of the provision is to authorize GEICO to pay the owner only if the insured does *not* own the vehicle. The policy language is not so limited, and extends to situations of joint ownership. As amicus curiae 20th Century Insurance Company points out, in such a case the provision operates to allow the insurer to settle with one co-owner of a vehicle if the other is disabled, cannot be located, or simply refuses to cooperate.[8] If there is the potential for unfairness or other problems in some cases, on the other hand there is the clear desirability of allowing the insurer to discharge its obligations by making a prompt payment which may be urgently needed for the purchase of a replacement vehicle.

We also disagree with the assertion that the policy provision is not sufficiently clear or conspicuous. Although the policy is lengthy, the provisions are well-spaced and marked with appropriate emphasis. That the

[8]We are not called upon to decide whether circumstances may exist in which an insurer's settlement with one co-owner over the objections of the other might be found to be in bad faith even if technically permitted under the policy. We only find that in this case, with Jameszetta seriously injured and unavailable for discussion, GEICO cannot be faulted for making a prompt settlement with her spouse and the co-owner of the vehicle.

provision in question is not set apart is not surprising, as we do not believe that notification that payment for damage to a vehicle may be made to the owner as an alternative to the insured is one of the more crucial portions of a policy. Not every policy provision can be on the first page of a policy, and the rule of conspicuousness is most commonly applied to exclusions and other factors of coverage, not routine explanatory or operative provisions. (See, e.g., *De May v. Interinsurance Exchange* (1995) 32 Cal.App.4th 1133, 1137 [38 Cal.Rptr.2d 581].) Although Jameszetta attempts to cast the provision in question as "exclusionary . . . as to Jameszetta" we reject the effort. It is *not* an exclusionary provision as the term is commonly understood; it does not restrict coverage or limit GEICO's financial obligations in any way. Parenthetically, we note that Jameszetta's ignorance of the provision would be irrelevant; she is chargeable with the clear provisions of the policy whether she read it or not. (*Hadland v. NN Investors Life Ins. Co.* (1994) 24 Cal.App.4th 1578, 1589 [30 Cal.Rptr.2d 88].)

In short, Jameszetta failed to raise a triable issue with respect to GEICO's legal right to make payment for the damaged vehicle to Demar, as a registered owner of the car. As GEICO breached no duty to her, the tort claims must fail.[9] Accordingly, GEICO was entitled to summary judgment.

Hollenhorst, Acting P. J., and Ward, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied June 14, 2000. Werdegar, J., was of the opinion that the petition should be granted.

---

[9]For example, in a cause of action for fraud Jameszetta alleges that GEICO fraudulently misrepresented that it would pay her the benefits in the event of an accident although it had no intention of doing so. But as we have explained, the policy makes no such promise.