Filed 3/28/14  Noble Security v. Wells Fargo Bank CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NOBLE SECURITY, INC. et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>WELLS FARGO BANK, N.A. et al.,<br><br>      Defendants and Respondents. | A134142<br><br>(Marin County<br>  Super. Ct. No. CV082499) |

This is an appeal from final judgment after the trial court granted the summary judgment motion of defendants Wells Fargo Bank, N.A., Wells Fargo & Company and two individual employees, Ghada Yasin and Helen Owyang (collectively, Wells Fargo). Plaintiffs Noble Security, Inc. (Noble Security), Noble Locks Enterprises, Inc. (Noble Locks) and Office Security Systems, Inc. (OSSI) challenge this judgment, arguing, among other things, that a triable issue of fact exists and that summary adjudication, not summary judgment, should have been ordered.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are affiliated corporations owned or controlled by Meir Avganim and engaged in manufacturing and selling mechanical locking systems for laptop computers. Noble Security is a California corporation with a Wells Fargo checking account opened in February 2003 and closed in January 2007; Noble Locks is a Nevada corporation that qualified to do business in California with a Wells Fargo checking account opened in

February 2004 and closed in June 2007; and OSSI is a Texas corporation with no Wells Fargo checking account.

Beginning in 2005, some plaintiffs and Avganim became involved in various lawsuits against, among others, their sales representative, Jane Ratto, and accountant, Penelope Kane. Briefly stated, these lawsuits involved Ratto's and Kane's alleged misappropriation of Avganim's and plaintiffs' corporate funds, including funds held in plaintiffs' Wells Fargo bank accounts. Relevant here, in August 2003, Kane opened a Wells Fargo checking account in the name of "Noble Enterprises," which was subsequently closed in October 2007. In May 2005, Ratto and her husband opened a Wells Fargo checking account in the name of "JR Marketing LLC dba Noble Locks Enterprises," which was subsequently closed in October 2006. Eventually, after the dispute between plaintiffs, the Rattos and Kane erupted, Wells Fargo filed an interpleader action to determine the proper owner of the funds held in the Noble Locks and Noble Security checking accounts. During discovery in these lawsuits, Wells Fargo produced to the plaintiffs records regarding, among other things, checks deposited in the accounts opened by Noble Security and Noble Locks, as well as in the JR Marketing accounts opened by Ratto, her husband or Kane. Ultimately, judgment was entered against Ratto and Kane awarding Avganim and the plaintiffs the corporate funds held in the Wells Fargo accounts, but denying them any damages based on the alleged wrongdoing.

On April 1, 2008, the California Franchise Tax Board forfeited the corporate powers of Noble Locks due to the corporation's failure to file tax returns or pay franchise taxes. This forfeiture of corporate powers lasted at least through January 2011. The corporate status of Noble Locks was subsequently reinstated and its corporate powers revived on February 14, 2011. Similarly, OSSI forfeited its corporate powers under Texas law as of January 2011 (after becoming inactive in 2005), and was then revived as a corporation in June 2011.

Meanwhile, on May 21, 2008, plaintiffs filed the operative complaint in this action asserting the following causes of action against Wells Fargo: conversion, breach of fiduciary duty, fraud/concealment, interference with economic advantage, negligence,

2

breach of contract and conspiracy. These causes of action were based on two primary theories. First, plaintiffs alleged that Wells Fargo allowed unauthorized persons to act as signatories on their accounts. Second, they alleged Wells Fargo deposited checks paid by third parties to one or more plaintiffs into accounts owned by other persons, including the Rattos. Wells Fargo answered the complaint, raising affirmative defenses based on, among other things, lack of capacity to sue and statutes of limitations.

On January 25, 2011, Wells Fargo moved for judgment on the pleadings based on its discovery during the course of litigation that Noble Locks had forfeited its corporate powers in California, during which forfeiture the statutes of limitations had run. Two months later, on March 11, 2011, Wells Fargo moved for summary judgment or, alternatively, summary adjudication on statute-of-limitations grounds and, as to OSSI, on the ground that it had forfeited its corporate powers under Texas Law and thus lacked the capacity to sue.[1]

Following a hearing on these motions, the trial court granted Wells Fargo's motion for summary judgment against Noble Locks, Noble Security and OSSI on statute-of-limitations grounds, and then denied as moot its motion for judgment on the pleadings against Noble Locks. Judgment was then entered in favor of Wells Fargo on October 25, 2011, prompting this timely appeal.[2]

## DISCUSSION

Plaintiffs raise the following issues on appeal. First, plaintiffs contend the statutes relied upon to find that Noble Locks forfeited its right to bring suit in California when it forfeited its corporate powers in California are needlessly "draconian" and should be relaxed in their case. (See Rev. & Tax Code, §§ 23301, 23301.5.) Second, plaintiffs repeat this essentially equitable argument with respect to the trial court's finding that

---

[1]     Wells Fargo also moved for summary judgment against plaintiff OSI, a Texas corporation. The court denied its motion as to OSI, a ruling not challenged on appeal.

[2]     Before entering judgment, the trial court granted Wells Fargo's application to correct a clerical error in its summary judgment order misidentifying Noble Security (instead of Noble Locks) as the corporate entity that forfeited its corporate status in 2008. The court thus filed an amended order on October 4, 2011.

3

OSSI, a Texas corporation, had also forfeited its corporate powers, including its right to bring suit.  Third, plaintiffs contend summary judgment should not have been granted because a disputed issue of fact exists regarding whether Noble Locks actually forfeited its corporate powers in California.  And, lastly, plaintiffs contend summary adjudication, not summary judgment, should have been granted because some claims are subject to longer statutes of limitations that did not expire.  We address each issue below in logical order.

The relevant standard of review is not in dispute.  Summary judgment may be granted "if it is contended that the action has no merit . . . ."  (Code Civ. Proc., § 437c, subd. (a).)  A defendant moving for summary judgment has met the burden of showing that a cause of action has no merit if that party "has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action.  Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.  The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto."  (Code Civ. Proc., § 437c, subd. (p)(2).  See also *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 168-169.)

"We review an order granting or denying a motion for summary judgment de novo, examining the evidence before the trial court. We independently determine the effects of that evidence as a matter of law.  (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 161, 163 [80 Cal.Rptr.2d 66].)  'In undertaking our independent review of the evidence submitted, we apply " ' "the same three-step process required of the trial court: First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a

triable, material factual issue. [Citations.]" ' " ' (*Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 392 [134 Cal.Rptr.2d 689].)" (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 601-602.)

## I.    Summary Judgment Against Noble Locks.

In granting summary judgment in favor of Wells Fargo, the trial court reasoned with respect to Noble Locks that it had forfeited its corporate status in California by failing to file tax returns or pay overdue taxes in California, which in turn precluded the corporation from bringing litigation in California during the forfeiture period. Further, during Noble Locks' forfeiture period, the relevant limitations periods – to wit, one year for claims based on payment of checks by unauthorized signatories and three years for claims based on depositing of checks intended for Noble Locks into the Rattos' JR Marketing account – had run. As such, the trial court concluded, all of Noble Locks' claims against Wells Fargo were now time-barred. We agree.

The following facts are relevant. Noble Locks' causes of action against Wells Fargo accrued no later than 2006, when Wells Fargo provided regular statements and checks to plaintiffs regarding their accounts. At that time, the applicable statutes of limitations began to run – to wit, one year, or until 2007, for the claims based on the alleged payment of checks to unauthorized signatories (Code Civ. Proc., § 340, subd. (c)), and three years, or until 2009, for the claims based on depositing checks intended by third parties for plaintiffs into others' accounts (Cal. U. Com. Code, § 3118, subd. (g)). On April 1, 2008, Noble Locks' corporate powers were suspended by the Franchise Tax Board pursuant to Revenue and Taxation Code sections 23302 and 23301.5 based upon its failure to, among other things, file tax returns and/or pay overdue taxes.[3] On May 21, 2008, plaintiffs filed the operative complaint in this lawsuit. In February 2011, Noble Locks was revived as a corporation in California upon the issuance of a certificate of reviver.

---

[3]    Unless otherwise stated, statutory citations herein are to the Revenue & Taxation Code.

5

That Noble Locks forfeited its right to sue when it forfeited its corporate powers is a matter of statutory law. Under section 23301, "the corporate powers, rights and privileges of a domestic taxpayer, may be suspended, and the exercise of the corporate powers, rights and privileges of a foreign taxpayer in this state may be forfeited" if, among other things, the corporation fails to pay any tax or penalty "on the last day of the 12th month after the close of the taxable year," or fails to pay any tax or penalty "due and payable under Chapter 4 (commencing with Section 19001) of Part 10.2, or under this part, upon notice and demand from the Franchise Tax Board . . . on or before 6 p.m. on the last day of the 11th month following the due date of the tax." (§ 23301, subds. (a), (b).) Similarly, section 23301.5 provides "the corporate powers, rights and privileges of a domestic taxpayer may be suspended, and the exercise of the corporate powers, rights and privileges of a foreign taxpayer in this state may be forfeited if a taxpayer fails to file a tax return." (§ 23301.5.)

Further, as our appellate colleagues in the Second Appellate District have explained: "A corporation which has its powers suspended pursuant to these sections lacks the legal capacity to prosecute or defend a civil action during its suspension. [Citations.] Accordingly, when a suspended corporation commences an action during its suspension, the statute of limitations continues to run. [Citations.] [¶] A suspended corporation may revive its corporate powers by complying with the requirements set forth in section 23305 which provides: 'Any taxpayer which has suffered the suspension or forfeiture provided for in Section 23301 or Section 23301.5 may be relieved therefrom upon making application therefor in writing to the Franchise Tax Board and upon payment of the tax and the interest and penalties for nonpayment of which the suspension or forfeiture occurred, together with all other taxes, deficiencies, interest and penalties due under this part, and upon the issuance by the Franchise Tax Board of a certificate of revivor. . . .' [¶] *If the statute of limitations runs out prior to revival of a corporation's powers, the corporation's action will be time barred even if the complaint would otherwise have been timely*. [Citations.] A corporation is so barred because, under section 23305a, the issuance of a certificate of revivor is 'without prejudice to any action,

6

defense or right which has accrued by reason of the original suspension or forfeiture.' [Citations.]" (*Sade Shoe Co., Inc. v. Oschin & Snyder* (1990) 217 Cal.App.3d 1509, 1512-1513 [italics added].)

Thus, applying this law to the undisputed facts of our case, the trial court correctly found Noble Locks' claims time-barred, given that its corporate powers were suspended in April 2008, a month before plaintiffs filed their complaint against Wells Fargo, with the result that the complaint's filing did not trigger commencement of this action or toll the applicable statutes of limitations. Further, the statutes of limitations continued to run until expiring, in 2007, for payment-to-unauthorized-signatories claims and, in 2009, for depositing-checks-in-other-accounts claims. (Code Civ. Proc., § 340, subd. (c); Cal. U. Com. Code, § 3118, subd. (g).) Noble Locks was then not revived until 2011, when a certificate of revivor issued, a date beyond the limitations period. (§ 23305.)

In challenging the trial court's reasoning, plaintiffs insist there is a triable issue of fact as to whether Noble Locks actually forfeited its corporate powers in California. We, however, disagree. The trial court, on Wells Fargo's motion, took judicial notice of a Secretary of State certificate dated January 6, 2011, stating as follows: "The records of this office indicate the California Franchise Tax Board forfeited [Noble Locks'] powers, rights and privileges on April 01, 2008, pursuant to the provisions of the California Revenue and Taxation Code, and the entity's powers, rights and privileges remain forfeited." Under California statutory law, no other proof was required. (§ 23302, subd. (c) ["The Franchise Tax Board shall transmit the names of taxpayers to the Secretary of State as to which the suspension or forfeiture provisions of Section 23301, 23301.5, or 23775 are or become applicable, and the suspension or forfeiture therein provided for shall thereupon become effective. *The certificate of the Secretary of State shall be prima facie evidence of the suspension or forfeiture*"] [italics added].)

Plaintiffs do not challenge the trial court's taking of judicial notice of the Secretary of State certificate. Plaintiffs insist, however, that they rebutted the certificate's "prima facie evidence" by offering the declarations of three corporate officers, including Avganim, in which they denied receiving notice of Noble Locks'

7

forfeiture of corporate powers.[4]  As plaintiffs note, a corporation's powers cannot be forfeited pursuant to sections 23301 or 23301.5 until the Franchise Tax Board has mailed to the corporation "a notice preliminary to suspension which indicates that the taxpayer will be suspended by a date certain," and that "date certain" has passed without the corporation coming into compliance.  (§ 21020, § 23302, subds. (a)-(c).)  However, as Wells Fargo points out, nothing in plaintiffs' proffered evidence actually contradicts the certificate's statement that Noble Locks' corporate powers were forfeited on April 1, 2008.  Simply put, even assuming the veracity of the declarants' denials of receiving the requisite notice, such facts would not prove the *corporation* failed to receive notice. Generally speaking, a corporation is deemed to have received notice when such notice is mailed to the corporation at its ordinary place of business.  It need not be mailed to any specific corporate officer or employee.  (*Pacific Gas & Elec. Co. v. State Board of Equalization* (1955) 134 Cal.App.2d 149, 153-154 ["When the notice is mailed correctly directed to the corporation as such at its own address, the service is completed and whether it reaches the specific agent or division which must act on it is the risk of the addressee corporation and depends on its care"].)  Accordingly, we conclude plaintiffs have failed on this record to rebut the presumption that the Franchise Tax Board's official duty to mail to Noble Locks notice preliminary to suspension pursuant to section 21020 "has been regularly performed."  (Evid. Code, § 664; § 23302; § 21020.)  While plaintiffs may have produced evidence three Noble Locks representatives received no notice of forfeiture, they produced no evidence the corporation did not receive notice, much less that the requisite notice was never mailed.  Such evidence does not, as the trial court found, create a disputed issue of material fact capable of defeating summary judgment. Accordingly, the trial court had a proper basis for finding its claims time-barred.  (*Sade Shoe Co., Inc. v. Oschin & Snyder, supra,* 217 Cal.App.3d at p. 1513 [a corporation's revival is without prejudice to the limitations defense accruing during the forfeiture

---

[4]      According to these declarations, Avganim was Noble Locks' "World Wide Group Director;" Shimon Yair was one of its "principal[s], with signing authority; and Rodney Lewin was its designated agent for service of process.

period]; § 23305a ["Upon the issuance of the certificate by the Franchise Tax Board the taxpayer therein named shall become reinstated but the reinstatement shall be without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture"].)

Further, we decline plaintiffs' request to excuse Noble Locks from compliance with sections 23301 and 23301.5 based on purported wrongdoing by Wells Fargo. Plaintiffs theorize that Noble Locks could not file mandatory tax returns or pay overdue taxes because Wells Fargo mishandled its accounts or otherwise tied up their corporate funds in the interpleader action. However, they present no actual evidence of wrongdoing, much less legal authority for the proposition that wrongdoing may provide a basis for excusing a corporation from otherwise mandatory tax laws. As such, they provide no legal basis for reversal. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 [plaintiff may not rely on speculation to defeat summary judgment].) Moreover, while plaintiffs urge this court to fashion an exception to the forfeiture rules similar to the recognized exception for delinquent corporate taxpayers that substantially comply with the State's corporate revival statute, plaintiffs neither claim nor attempt to prove Noble Locks substantially complied in this case. (See *Sade Shoe Co., Inc. v. Oschin & Snyder, supra,* 217 Cal.App.3d at p. 1515 ["a corporation which has been suspended pursuant to sections 23301 and/or 23301.5 may nonetheless prosecute or defend an action prior to its official revivor provided there has been substantial compliance with the revival statute"].) We thus decline their request for lack of legal and factual support.

## II.    Summary Judgment Against OSSI.

Plaintiffs then argue without offering additional legal support or analysis that summary judgment against OSSI was error for all the same reasons summary judgment against Noble Locks was error. Specifically, as with Noble Locks, the trial court found OSSI's claims were time-barred because the applicable one- and three-year statutes of limitations had run while its corporate powers under Texas law had been forfeited. Even assuming this argument was not waived based on plaintiffs' failure to provide proper legal authority or analysis in their briefs on appeal (*Provost v. Regents of University of*

9

*California* (2011) 201 Cal.App.4th 1289, 1294), the undisputed law and facts nonetheless support the trial court's ruling.

Similar to California corporations, Texas corporations failing to pay taxes and file tax returns forfeit corporate powers, including the power to sue. (Texas Tax Code Ann., §§ 171.251, 171.252.) Further, under California law, a foreign corporation lacking the power to sue in its state of incorporation likewise lacks power to sue in California. (*CM Record Corp. v. MCA Records, Inc.* (1985) 168 Cal.App.3d 965, 969.) That is precisely what occurred here, and thereby allowed the expiration of OSSI's claims – to wit, OSSI's corporate powers were forfeited in October 2005 and were still forfeited as of January 2011, a date after the limitations periods had ended (in 2007, for payment-to-unauthorized-signatories claims and, in 2009, for depositing-checks-in-other-accounts claims). (Code Civ. Proc., § 340, subd. (c); Cal. U. Com. Code, § 3118, subd. (g).) Thus, for all the reasons already explained, we conclude no basis exists for disturbing the trial court's grant of summary judgment against OSSI.

## III. Summary Judgment Against Noble Security.

Finally, plaintiffs contend the trial court erred by granting summary judgment rather than summary adjudication against Noble Security because certain of its claims survived the statute of limitations. As plaintiffs note, Noble Security did not forfeit its corporate powers like the other plaintiffs. As such, plaintiffs insist claims raised by Noble Security that accrued no later than 2006 and that have a three-year limitations period were not time-barred when the complaint became operative as to Noble Security upon its filing in May 2008.[5]

Wells Fargo disputes this contention. It reasons that the operative complaint does not include any claim by Noble Security subject to a three-year limitations period (i.e., those based on the bank's alleged depositing of third-party checks intended for one or more plaintiffs into the accounts of third parties). Rather, Wells Fargo continues, the complaint only raises claims based on this theory on behalf of Noble Locks and "those

---

[5]    Plaintiffs implicitly concede claims governed by the one-year statutory limitations period are time-barred.

10

Plaintiff corporations which did not have Wells Fargo accounts." Undeniably, Noble Security did have a Wells Fargo account during the relevant time period. Moreover, Wells Fargo adds, the trial court expressly invited plaintiffs to address the issue of whether Noble Security asserted other claims that would survive the statute of limitations by "fil[ing] an appropriate motion," but plaintiffs admittedly did not do so. We agree with Wells Fargo that, on this record, the trial court's ruling as to Noble Locks must stand.

The complaint, in paragraphs 7 through 10, makes several allegations relating to Wells Fargo's alleged permitting of unauthorized persons to act as signatories on plaintiffs' accounts, including by "delet[ing] the names of the *Plaintiffs'* agents who were proper signatories on the *Plaintiffs'* accounts, and add[ing] the names of other unauthorized persons to act as signatories on *Plaintiffs'* accounts." (Italics added.)

The complaint, in paragraphs 11 through 14, then makes several allegations with respect to Wells Fargo's alleged depositing of checks into accounts opened or owned by third parties with no right to plaintiffs' corporate funds. However, unlike the allegations in paragraphs seven through ten, which refer to "plaintiffs" collectively, the allegations in paragraphs 11 through 14 mention only specific plaintiffs, namely Noble Locks and those plaintiffs without Wells Fargo accounts. Specifically, the complaint states:
"Wells Fargo, through the actions of certain of the Individual Defendants, opened an account under the name of JR Marketing, LLC, dba Noble Locks Enterprises. *When Wells Fargo received checks for deposit which were written to the corporate Plaintiff, Noble Locks Enterprises, Inc*., instead of depositing these checks into the proper account owned by the Plaintiff corporation, Wells Fargo deposited them into the JR Marketing LLC account, thereby converting *Noble Locks Enterprises, Inc.*'s checks. (Italics added.) "*Wells Fargo and the Individual Defendants also received checks made payable to those Plaintiff corporations which did not have Wells Fargo accounts*. Defendants deposited these checks into accounts owned by other persons or entities who had no right to receive those funds, thereby converting Plaintiffs' checks." (Italics added.)

11

Finally, in the later sections of the complaint in which specific causes of action are raised (including conversion, interference with economic advantage and negligence), the complaint generally states as to each cause that it "incorporate[s] each of the foregoing paragraphs as if fully set forth herein." The complaint does not, however, set forth any additional facts or allegations purporting to add Noble Security as a party claiming to have been injured by Wells Fargo's alleged depositing of checks into accounts opened or owned by third parties with no right to plaintiffs' corporate funds.

Plaintiffs direct us specifically to paragraphs 36 and 37, which provide in relevant part: "Defendants . . . failed to deposit checks payable to Plaintiffs into Plaintiffs' accounts. In doing so, Defendants disrupted Plaintiffs' economic relations with their customers." However, we decline to read this sentence in isolation from the rest of the complaint, particularly from those paragraphs incorporated by reference that, as we just explained (pp. 10-11, *ante*), limit claims arising from Wells Fargo's alleged depositing of checks in the wrong accounts to plaintiffs *other than* Noble Security. (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370 [courts must give the complaint "a reasonable interpretation, reading it as a whole and its parts in their context"].) As such, we agree with Wells Fargo summary judgment, not summary adjudication, against Noble Security was proper because the operative complaint failed to raise any claims against the bank based on its depositing of checks into third parties' accounts. (*Turner v. State of California* (1991) 232 Cal.App.3d 883, 891 ["The pleadings delimit the issues to be considered on a motion for summary judgment"]; *Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98-99, fn. 4 ["defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers"].)

Accordingly, we stand by our conclusion that plaintiffs have failed to prove error in the trial court's grant of summary judgment against each of the three plaintiffs – Noble Locks, Noble Security and OSSI – based on the running of the statutes of limitations.

## DISPOSITION

The judgment is affirmed.

12

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Pollak, J.